[No. G000538. Fourth Dist., Div. Three. Aug. 19, 1985.]

STEVEN LAWRENCE, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**Counsel**

Wylie A. Aitken, Stanton T. Mathews and James B. Abeltin for Plaintiff and Appellant.

Robert F. Carlson, Joseph A. Montoya, Robert L. Meyer, Anthony J. Ruffolo and Richard J. Barnet for Defendant and Respondent.

**OPINION**

**CROSBY, J.**—Steven Lawrence failed to present a claim for an injury suffered on a public sidewalk with the correct entity, the State of California. We find the error was excusable because he did—reasonably but erroneously—serve the County of Orange well within the statutory time and the county chose not to alert him to the truth concerning ownership of the property until the 100-day period in which to serve the proper agency had run. Accordingly, we reverse the order denying his petition to be relieved of the claims filing requirement.

I

Lawrence alleges he stepped on a sharp piece of metal protruding from the sidewalk along Pacific Coast Highway in Dana Point, an unincorporated area in the County of Orange, on March 8, 1982. Lawrence retained counsel within five weeks, and a secretary was assigned the task of determining which public agency to present with the claim (Gov. Code, § 911.2).

She telephoned the sheriff's substation in south Orange County and was advised Dana Point was not an incorporated city and had no responsibility for sidewalk maintenance and that the area was under the control of the county. For reasons not explained in any declaration, the secretary also contacted several other cities in the vicinity and was advised "they were [all] part of the County." She reported her findings to an attorney in the office who caused a claim to be filed with the County of Orange on April 30, 1982.

Lawrence's attorneys received an acknowledgment of receipt of the claim on May 4, 1982, which stated it had been referred to the county's risk management department for processing. When the 45-day period to act on it passed with no further response, counsel filed a complaint against the county. Not until August 6, 1982, more than three months after receiving the claim, did the county finally advise Lawrence's counsel that the site of the accident was actually under the jurisdiction and control of the State of California.

By this time, of course, the 100-day period to present a claim to the state had lapsed. Lawrence's application to file a late claim was denied, and he petitioned the superior court for relief from the claims presentation requirement (Gov. Code, § 946.6). The trial court found he did not make "a reasonable effort . . . to determine who the proper entity was" and denied the petition. We disagree.

## II

■ Because the "trend [is] . . . in favor of granting relief unless absolutely forbidden by statute . . ." (*Viles* v. *State of California* (1967) 66 Cal.2d 24, 33 [56 Cal.Rptr. 666, 423 P.2d 818]), an order denying relief from the claims presentation requirement is reviewed more closely than one granting relief. (*Ebersol* v. *Cowan* (1983) 35 Cal.3d 427, 435 [197 Cal.Rptr. 601, 673 P.2d 271].) Nevertheless, to be relieved of the claims presentation requirement under Government Code section 946.6 the petitioner must demonstrate mistake, inadvertence, surprise, or excusable neglect. (*Id.,* at p. 435.) ■ Lawrence's counsel concedes the error, but argues it was excusable, i.e., " 'that neglect which might have been the act of a reasonably prudent person under the same circumstances.' [Citation.]" (*Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 476 [58 Cal.Rptr. 249, 426 P.2d 753].)

Factually, this case is somewhat similar to *Kaslavage* v. *West Kern County Water Dist.* (1978) 84 Cal.App.3d 529 [148 Cal.Rptr. 729], where the petitioner was injured when he struck a submerged pipe while swimming in a canal managed by Buena Vista Water District. He filed a claim with that entity, but did not learn the offending pipe was owned by another water district until more than 100 days after the accident. His petition to be relieved of the claims filing requirement was denied. The appellate court concluded the investigation by petitioner's counsel, although negligent, was neither "cavalier" nor "devoid of diligence" and reversed. (*Id.,* at p. 536.)

By way of contrast, in *Shank* v. *County of Los Angeles* (1983) 139 Cal.App.3d 152 [188 Cal.Rptr. 644], a patient slipped and fell as she left her physician's office. Her attorney wrote to the medical center within hours of the accident and asked that his letter be forwarded to the center's insurance carrier. The center replied on stationery which bore the county seal, the words "Department of Health Services," and the letterhead, "LOS ANGELES COUNTY–OLIVE VIEW MEDICAL CENTER." More than 100 days after the accident, the center advised any claim would have to be made to the county board of supervisors. The appellate court affirmed denial of the petition for relief from the claims presentation requirement, noting, "a petitioner or his attorney must show more than that they did not discover a fact until too late; they must establish that in the use of reasonable diligence they failed to discover it. [Citations.] There is a total absence of evidence that petitioner or her attorney exercised reasonable diligence (or any diligence) in an effort to ascertain the public status of Olive View. . . . The trial court properly could find that such conduct was not that of a reasonably prudent person under similar circumstances, and thus constituted inexcusable neglect." (*Id.,* at p. 157.)

Contrary to the semantic nitpicking of the dissent, the secretary to Lawrence's counsel, unlike the attorney in *Shank,* did conduct an investigation, however modest; unfortunately it yielded incorrect information. Like the investigator in *Kaslavage,* she probably asked the wrong questions and might perhaps be criticized for failing to verify her information with another department of the county before filing the claim. But how painstaking and intense is such a simple inquiry expected to be? Given the apparent lack of complexity of the assignment, we think her efforts were sufficient. An arm of the county government, the sheriff's office, specifically informed her the sidewalk was under county control; and a claim was filed with that entity well in advance of the 100-day limit.

We do not, as the dissent incorrectly suggests, approve sloppiness in the practice of law. But as judges we must not be so quick to forget the realities of the hectic and complex world of contemporary litigation. The crazy-quilt geography of our state's political subdivisions and its stringently short claims statute create a deadly trap for even the most wary; but there is lamentably little time in busy law offices for redundant effort or double-checking of deceptively simple projects such as determining who owns a particular sidewalk. Mistakes will be made: That is why the Legislature has created various provisions to correct them and why courts should not hesitate to implement the cure where it is just to do so—as it surely is here.

Although we are unaware of its motives, the county behaved as though it deliberately desired to sabotage Lawrence's lawsuit. After promptly acknowledging receipt of his claim, it waited a great while before notifying his counsel that the sidewalk was not within its jurisdiction. The county's prompt written acknowledgment, coupled with the failure to disclaim responsibility during the running of the balance of the 100-day period would have lulled any attorney into a false sense of security; there was never the slightest indication to suggest the necessity of further inquiry.

Consequently, we find the neglect to have been of the excusable variety. Those responsible for the processing of tort claims in government agencies, such as Orange County's risk management office, are acutely aware of the stringent time requirements of the Tort Claims Act. And they are—or should be—quite familiar with the parameters of the urban public property within their domain. In light of the county's behavior, it is entirely understandable that Lawrence's counsel did not catch the error. Under these circumstances it is more appropriate for the state, which has never hinted that it has been prejudiced by the relatively short delay, to yield to its injured citizen.

Accordingly, the order denying the petition for relief from the claims presentation requirement is reversed. Each party shall bear its own costs on appeal.

Wallin, J., concurred.

**SONENSHINE, Acting P. J.**—I respectfully dissent.

The majority states "a secretary was assigned the task of determining which public agency to present with the claim." (Majority opn., *ante,* p. 244.) However, nowhere in any of the three declarations submitted to the court is it suggested the secretary was assigned such a task.[1] The declarations speak for themselves. The secretary was attempting to find with whom to present "a Government claim for injuries sustained in Dana Point, California." (Declaration of Judy C. McLain—dated Aug. 3, 1983.)

It is also suggested by the majority the secretary "did conduct an investigation." (Majority opn., *ante,* p. 244.) They fault governmental employees for incorrectly identifying the county as the responsible entity. But as the respondent points out, "the declarations give no evidence that anyone represented that the sidewalk was the county's . . . and [n]owhere is it stated that [the declarant], at any time, was told that the sidewalk was the county's or even that she asked about its ownership." In other words, it was assumed the injury took place on county property.

The secretary did not conduct an investigation. If she had, the necessary information would have been easily ascertainable. In *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468 [58 Cal.Rptr. 249, 426 P.2d 753], Mrs. Tammen had consulted her attorneys about probating her husband's estate. Her husband died on February 17, 1963, as a result of injuries sustained in a car accident on a state highway. In July, after a conversation with an insurance adjuster, she spoke with her lawyer regarding a claim against the city. However, no claim was filed until January 1964.

Mrs. Tammen argued " 'certain aspects of said accident, particularly the relationship between the City of Oceanside, the County of San Diego and the State of California, on the safe keeping and maintenance of Highway 78 was not ascertainable and was not discovered until the month of December 1963.' " (*Id.,* at p. 477.) However, the appellate court concluded, "[t]here was evidence that both Mrs. Tammen and counsel knew as early as July 19, 1963, that there was a possibility of a claim against the *city.* It was known that Highway 78, where the accident occurred, was a *state* highway. An inquiry from the governing body of the city or the department of public works as to the responsibility for the maintenance of the highway would have disclosed whether some cooperative agreement existed to which the

---

[1]The declarations of the attorney and secretary are set forth in the appendix.

county was a party. It stretches one's credulity to believe that this information could not have been ascertained through the exercise of reasonable diligence between July 19, 1963, and the 'month of December.' [¶] If counsel was surprised to discover in the month of December that the County of San Diego was in some way responsible for the asserted dangerous and defective condition of the state highway, it is not the kind of surprise that will relieve his client from default. The 'surprise' contemplated by section 473 of the Code of Civil Procedure is some condition or situation in which a party is unexpectedly placed to his injury, without any fault of his own, under circumstances which he was not reasonably called upon to anticipate and which ordinary foresight could not have guarded against. Nor is such conduct that of a reasonably prudent person under the same circumstances, so as to be regarded as excusable neglect. [Citation.] It is not the purpose of remedial statutes to grant relief from defaults which are the result of inexcusable neglect of parties or their attorneys in the performance of the latter's obligation to their clients. [Citation.] The court therefore did not act arbitrarily in disbelieving that the identity of the public entities responsible for the condition of the state highway could not have been discovered until the indeterminate 'month of December.' " (*Id.*, at pp. 477-478.)

And the majority fares no better in relying on *Kaslavage* v. *West Kern County Water Dist.* (1978) 84 Cal.App.3d 529 [148 Cal.Rptr. 729]. There appellant was injured while swimming in a canal managed and controlled by Buena Vista Water District. Kaslavage did not learn until after the 100-day time limit had passed that the pipe traversing the canal, and upon which he struck his head, was owned by another water district. The appellate court reversed an order denying petitioner relief from filing a late claim. The court conceded the investigator's efforts were less than complete, but recognized "[o]n the other hand, he did spend part of two days in investigation, including an on-site inspection and a check of the official records of the assessor's office. He also questioned four different public agencies in an attempt to obtain information." (*Id.*, at p. 535.) "Although the failure to make [other] inquiries was neglectful, and the general rule is that the client is chargeable with the omissions of his [or her] attorney [citation], the investigator's actions were not devoid of diligence." (*Id.*, at p. 536.)

Recently decided *Torbitt* v. *Fearn* (1984) 161 Cal.App.3d 860 [208 Cal.Rptr. 1] is also instructive. A truck went out of control on a state highway on June 2, 1981, crossing the center divider and colliding with other vehicles. Torbitt was injured in this accident and promptly retained an attorney. A complaint was filed against several defendants, but no claim was made against the state until February 1982. Torbitt's counsel argued he was unaware the state could be liable until he met with a reconstruction

expert in January 1982. The appellate court upheld the trial court's rejection of the request to be relieved from the 100-day requirement.

The court noted counsel "never researched the law nor gave any consideration to the question as to whether or not a claim should be filed against the state . . . ." (*Id.*, at p. 864.) The court also commented, "The other problem with the reasoning of plaintiffs/appellants is that counsel did not make a legitimate factual investigation nor engage in any legal research to determine whether or not such cause of action might be feasible. He simply disregarded the concept in the entirety until it was pointed out to him by a traffic engineer." (*Id.*, at p. 865.)

In the present case, counsel initially thought the area was within the county's aegis. This was not based on information supplied by either the county or state. The error was not based upon reliance on misplaced papers or misinformation supplied to him by secretarial staff. And this conduct stands in marked contrast to the facts in *Kaslavage,* where there was an investigation. Here there was no investigation; merely an incorrect assumption of ownership.

Like counsel in *Torbitt,* the attorney here did not make a legitimate factual investigation. (*Id.*, at p. 865.) And, as in *Tammen,* the injury occurred on a *state highway* which should have been a red flag to counsel concerning the state's involvement. Although the highway was located in an unincorporated city, under the auspices of the county, reasonable diligence on the part of counsel would have led to discovery of the proper entity with whom to file the claim.

The trial court, in indicating its intended decision, stated, "I cannot find that under all of the cases . . . there was a reasonable effort made to determine who the proper entity was." Lawrence's counsel argued the claim was filed with the county because of representations "of a county employee that the sidewalk area, where the accident occurred, was county property." Lawrence even received a second chance to file supplemental declarations.

However, all the declarations paint the same picture. "[T]he office was retained by claimant in reference to a possible claim against *the County of Orange* or *the City of Dana Point.*" (Italics added.) No investigation was conducted. This initial assumption, that the claim was to be filed with the county or the city, was not based on information supplied by any governmental agency. Various agencies were contacted. The question to each was where to file a claim for an injury occurring in the city of Dana Point. Eventually the secretary was told to contact the county. The agencies did no more than correctly respond to the wrong question. If proper, or indeed

*any,* investigation had commenced, counsel could have ascertained the appropriate agency with which to file the claim.

I cannot find this conduct excusable. "The policy that the law favors trying all cases and controversies upon their merits should not be prostituted to permit the slovenly practice of law or to relieve courts of the duty of scrutinizing carefully the affidavits or declarations filed in support of motions for relief to ascertain whether they set forth, with adequate particularity, grounds for relief. When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law." (*Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 282 [75 Cal.Rptr. 848], fn. omitted.)

Nor am I inspired by the majority's other suggestion. They find the respondent has not shown any evidence of prejudice. There is no burden to establish prejudice until appellant shows the failure to present the claim was through excusable neglect. Lawrence has not made this showing.

" 'While there is a strong public policy in favor of permitting a trial of a case on its merits, the determination as to whether a particular mistake of law warrants the granting of relief reposes largely in the discretion of the trial court. (Citation.) In the instant case [the majority should not be] interested in the question as to whether the trial court could have granted relief based on the claimed mistake of law, but, since the trial court denied relief, only in whether such holding was within its discretion.' [Citation.] [¶] . . . 'However, a mistake as to law does not require relief from default as a matter of law. (Citation.) The issue of which mistakes of law constitute excusable neglect presents a fact question; the determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law.' Excusable neglect is 'that neglect which might have been the act of a reasonably prudent person under the same circumstances.' [Citation.] [¶] Applying the foregoing rules to the facts of the present case, [I would hold] the court did not abuse its discretion in finding that [appellant] was not entitled to relief because of mistake of law." (*Tammen* v. *County of San Diego, supra,* 66 Cal.2d 468, 476.)

The majority's apparent dislike for the claims statute should be directed to the Legislature. I would affirm the judgment.

A petition for a rehearing was denied September 5, 1985. Sonenshine, Acting P. J., was of the opinion that the petition should be granted. Respondent's petition for review by the Supreme Court was denied December 18, 1985.

## Appendix

### Declaration of Jody C. McLain

I, Jody C. McLain, declare:

That I am a secretary employed by the Law Offices of Wylie A. Aitken, the attorneys of record in the above-captioned lawsuit.

That between April 15, 1982 and April 30, 1982, I contacted the Dana Point Sheriff's Office regarding presentation of a Government Claim for injuries sustained in Dana Point, California. I was informed that Dana Point was not a City and was referred to Laguna Niguel's Sheriff's Office.

That I then contacted Laguna Niguel's Sheriff's Office was referred to the San Clemente Sheriff's Office.

That I next contacted San Clemente Sheriff's Office and was advised, by a public employee at said Sheriff's Office, to present the claim to the Orange County Clerk, Board of Supervisors.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 3rd day of August, 1983 at Santa Ana, California.

Dated: August 3, 1983

BY: /s/ Jody C. McLain

### Declaration of John C. Adams, III

I, John C. Adams, III, declare:

That I am an attorney at law licensed to practice in the State of California and I am an associate with the attorneys of record in the above-captioned lawsuit.

That on or about April 15, 1982, this office was retained by claimant in reference to a possible cause of action against the County of Orange or the City of Dana Point. The nature of said cause of action is more fully described in the proposed Claim attached to this Petition.

Between April 15, 1982, and April 30, 1982, contact was made with the Dana Point Sheriff's Office regarding presentation of a Governmental Claim. This office was informed Dana Point was not in fact a City, and then referred to Laguna Niguel's Sheriff's Office. Laguna Niguel's Sheriffs in turn referred this office to San Clemente Sheriffs. This office was then advised to present our claim to the Orange County Clerk, Board of Supervisors.

That on April 30, 1982, a Government Claim was presented to the County of Orange based on the foregoing investigation.

At this time, we had no information which indicated that the site of the incident was within the control or jurisdiction of the State of California.

That on May 4, 1982, a response was received from the County of Orange, Administrative Office, Risk Management, for processing. (Attached as Exhibit "A").

That on July 20, 1982, 45 days had passed without any further response from the County of Orange or its representatives.

That on July 29, 1982, a formal complaint was filed with the Orange County Superior Court naming the County of Orange as defendant.

That on August 6, 1982, this office first received a letter from the County of Orange disclaiming any liability for the injuries sustained by Steven Lawrence. (Attached as Exhibit "B"), and informing this office for the first time that the subject property was not within the jurisdiction and control of the County, but rather was with that of the State of California.

At no time prior to August 6, 1982, did this office have any information indicating that the subject property was within the control and jurisdiction of the State of California as opposed to the County of Orange.

Upon discovery of this fact and our realization that a Government Claim therefore, should have been made against the State of California but was not, due to the misinformation indicated above, we diligently proceeded to submit an Application for Leave to File Late Claim.

That on February 8, 1983, the State Board of Control, denied said Application (Attached as Exhibit "C"). Said Application was file in a timely manner, being filed prior to one year after the accrual of Petitioner's cause of action.

The Petitioner is informed and believes that the delay in presenting this claim to the State of California does not unduly cause any prejudice to the State by this delay, and thereupon this Petition should be granted.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 3rd day of August, 1983 at Santa Ana, California.

DATED: AUGUST 3, 1983

BY: /s/ John C. Adams, III
Attorney for Claimant

LAW OFFICES
**WYLIE A. AITKEN**
A LAW CORPORATION
600 WEST SANTA ANA BOULEVARD
PENTHOUSE SUITE
SANTA ANA, CALIFORNIA 92701
TELEPHONE (714) 834-1424
(714) 834-1055

(SPACE BELOW FOR FILING STAMP ONLY)

FILED

SEP 26 1983

LEE A. BRANCH, County Clerk

By_____Deputy

Attorney for__Plaintiff__

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

| | |
|---|---|
| STEVEN LAWRENCE,<br><br>          Plaintiff,<br><br>vs.<br><br>STATE OF CALIFORNIA AND<br>DOES 1-20, inclusive,<br><br>          Defendants. | CASE NO: 409306<br>SUPPLEMENTAL<br>DECLARATION OF JODY MCLAIN<br>IN SUPPORT OF PLAINTIFF'S<br>PETITION FOR RELIEF FROM<br>REQUIREMENT FOR PRESENTATION<br>OF CLAIM |

I, JODY MCLAIN, declare :

That I am a secretary employed by the Law Offices of Wylie A. Aitken, attorneys of record for plaintiff herein.

That on approximately April 15, 1982, I contacted the Dana Point Sheriff's Office. I spoke to an Orange County Deputy Sheriff and was advised Dana Point was an unincorporated city and part of the county and the "city" therefore, was not responsible for the maintenance of sidewalks in the City of Dana Point.

I thereafter contacted the Laguna Sheriff's Office and again was told this city is unincorporated and is part of the County and, therefore, was not responsible for the side-

28

walk where the accident occurred.

I then called San Clemente City Hall and was advised by a City Clerk that likewise the "city" of San Clemente was not in control of the sidewalk in question.

I contacted San Juan Capistrano City Hall and again spoke with a City Clerk. She told me the same thing the other three (3) public entities had advised me; that is, that they were part of the County. I then told the clerk I had called all the cities surrounding the accident site with no success of identifying the proper party in control other than the fact that everyone told me they were part of the County. I was advised to forward my claim to the Clerk, Board of Supervisors for the County of Orange.

My honest belief was that I was presenting my claim to the proper entity, County of Orange, and there was no mistake on my part. I was told unequivocally this was County property on a four (4) separate occasions. I felt there was no need to do other than that which I knew to be proper, and that is file a Government Claim with the County of Orange.

I then advised Mr. Mathews, an attorney with the office of my findings. He told me that based upon the information I had received that the County of Orange was the appropriate entity for the filing of the Claim.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of September, 1983 at Santa Ana, California.

DATED: 9/23/83                    x _____
                                  JODY MCLAIN

29

2.