[No. G007615. Fourth Dist., Div. Three. July 17, 1990.]

RICHARD GREENE, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Fletcher & Roit and Natasha Roit for Plaintiff and Appellant.

Joseph A. Montoya, Anthony J. Ruffolo, Robert W. Vidor, Larry R. Danielson and Matthew S. Lipinski for Defendant and Respondent.

OPINION

**MOORE, J.**—Plaintiff Richard Greene appeals from an order denying his petition for leave to file a late claim against the State of California. (Gov. Code, § 946.6.) Appellant contends the lower court abused its discretion by denying the petition because he was physically and mentally incapacitated

during the entire initial claim period, and filed his application to present a late claim with the state within a reasonable time. We affirm.

FACTS

On January 19, 1987, appellant was injured in a single vehicle traffic accident while riding a motor scooter. A report prepared by a California Highway Patrol (CHP) officer who investigated the accident stated it occurred on "SR-1 (Pacific Coast Hwy) . . . 126[ ] feet north of Aliso Way." The report also noted the accident was "state highway related." Eyewitness statements obtained by the investigating officer indicated appellant was traveling southbound in the roadway's number two lane when the vehicle turned over, throwing him to the pavement. The report made no reference to a bicycle lane.

Paramedics transported appellant to a local hospital. Appellant remained hospitalized until April 15, when he was discharged under a friend's supervision. After being released, he continued receiving outpatient therapy.

In May, appellant contacted his present attorney because of problems with his medical insurance. On June 22, appellant retained counsel to represent him in this matter. Counsel requested a copy of the CHP report covering the accident on July 1.

Simultaneously, counsel's secretary contacted local public entities asking about the accident location. Employees with the City of Laguna Beach and the county clerk's office informed her the accident location was in Orange County and appellant needed to file a claim with the county. The secretary requested copies of the county's claim form which were received in late August.

On September 2, appellant's counsel filed an application for leave to present a late claim and a claim with the county. The claim described the location of the accident as "SR-1 (Pacific Coast Highway), . . . [n]orth of Aliso Way." It alleged the county was liable "[d]ue to the faulty construction and/or lack of warning as to the end of the bike path . . . ."

The county denied appellant's application for leave to present a late claim on November 10. A county claims representative told counsel's secretary the county did not own the property where the accident occurred and indicated she believed the state owned it. The State Department of Transportation was then contacted, but allegedly declined to confirm its ownership of the property since appellant might have a claim against the state. An unsuccessful attempt was made to ascertain the property's ownership

through a title insurance company. The title insurer confirmed the property was owned by a governmental entity, but could not tell which one.

On December 15, appellant filed an application for leave to present a late claim and a claim with respondent. The claim included the same allegations regarding the accident's location and respondent's basis of liability as contained in the claim submitted to the county. No response to the application and claim was received by appellant. The application was deemed denied on January 29, 1988. (Gov. Code, § 911.6, subd. (c).)

Appellant filed a petition for relief from the failure to timely file a claim with both the county and the state. The state opposed the petition.[1]

At oral argument, the court stated respondent had presented some evidence indicating appellant was not incapacitated for the entire 100-day claim filing period. However, it also pointed to the "long delay, including a long delay after the county was noticed, before anything was done with the state and no real explanation on that." Ultimately, the court denied the petition stating: "[T]he old 100-day statute . . . was used as a target, not an absolute barrier[.] [B]ut you still have to show some reasonable diligence in getting your claims . . . going, and it just has not been shown here. [¶] Even looking at everything favorable to the litigants, it's just not there. There's no legitimate excuse proffered for why this thing dragged and dragged the way it did . . . ." This appeal followed.

## DISCUSSION

Appellant argues he was physically and mentally incapacitated during the entire claim filing period, even though the hospital released him before the period expired, and that he was diligent in attempting to discover who owned the property where the accident occurred. ▇▇▇ We find it unnecessary to determine whether appellant remained incapacitated for the entire claim filing period. The accident occurred on a state highway, and respondent's ownership and control of it is established by statute. Accordingly, we conclude the evidence supports the lower court's finding appellant failed to exercise reasonable diligence in submitting a claim and application for leave to present a late claim to respondent.

Prior to January 1, 1988, a personal injury claim against a public entity had to be filed "not later than the 100th day after the accrual of the cause of action." (Gov. Code, § 911.2.)[2] If a person fails to timely file a claim, he or

---

[1] Although the county also opposed the petition, appellant filed a request to dismiss the county without prejudice prior to the hearing. Thus, the county is not a party to this appeal.

[2] Effective January 1, 1988, Government Code section 911.2 was amended to extend the time for filing a claim to six months after a cause of action accrues. (Stats. 1987, ch. 1208, § 3, No. 11 West's Cal. Legis. Service, p. 194, No. 4 Deering's Adv. Legis. Service, p. 4426.)

she can apply to the public entity for leave to present a late claim if the application is presented "within a reasonable time not to exceed one year after the accrual of the cause of action." (Gov. Code, § 911.4, subd. (b).)

Where the public entity denies an application, the party may petition a court for relief. (Gov. Code, § 946.6, subd. (a).) Subdivision (c) of section 946.6 requires the court to grant relief if it "finds that the application . . . was made within a reasonable time . . . and that one or more of the following is applicable: [¶] (1) The failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner . . . [¶] (3) The person who sustained the alleged injury, damage or loss was physically or mentally incapacitated during all of the time specified in Section 911.2 for the presentation of the claim and by reason of that disability failed to present a claim during that time."

█ "The granting or denial of the petition for relief under section 946.6 rests within the discretion of the trial court and its determination will not be disturbed on appeal except for abuse of that discretion. [Citations.] It is true that an appellate court more carefully scans the denial than the allowance of such relief to the end that wherever possible cases may be heard on their merits. [Citation.] Nevertheless, we cannot arbitrarily substitute our judgment for that of the trial court. [Citation.] 'Unless, ultimately, each case of this nature is to be decided by the Court of Appeal as if no trial court had ever acted on the petition, we must be careful to preserve the area of the superior court's discretion, and we must do this in fact, as well as in words.' [Citation.]" (*Shank* v. *County of Los Angeles* (1983) 139 Cal.App.3d 152, 156 [188 Cal.Rptr. 644]. See also *Bennett* v. *City of Los Angeles* (1970) 12 Cal.App.3d 116, 120 [90 Cal.Rptr. 479].)

"Remedial statutes such as . . . section 946.6 should be liberally construed. [Citation.] However, this does not mean that relief in such cases should be granted casually . . . . 'A petitioner must show more than that he did not discover a fact until too late; he must establish that in the use of reasonable diligence he failed to discover it.' [Citation.]" (*Dunston* v. *State of California* (1984) 161 Cal.App.3d 79, 83 [207 Cal.Rptr. 196].)

█ Appellant's counsel admitted requesting and receiving a copy of the CHP report covering the investigation of appellant's accident. Presumably, the report was obtained from the CHP itself. If so, that fact alone should have placed counsel on notice of the state's potential liability.

Furthermore, the report clearly reflects the accident occurred on State Route 1. This road is part of the state highway system. (Sts. & Hy. Code,

§ 301.) At the time of appellant's accident, Streets and Highways Code section 233 stated: "All title acquired by the public or by any governmental agency to any real property, or interests therein, used for rights of way of any highway heretofore or hereafter constituted a state highway is vested in the name of the people of the State of California." In addition, the Department of Transportation has "full possession and control of all state highways" (Sts. & Hy. Code, § 90), and is statutorily obligated to maintain and control them. (Sts. & Hy. Code, §§ 91-92.)

Thus, as of July 1987 counsel was aware of facts establishing respondent's potential liability for appellant's injuries. Nonetheless, counsel delayed filing an application and claim with it for nearly five more months.

Appellant contends this delay was reasonable noting he was physically and mentally incapacitated as a result of the accident, and his attorney was erroneously informed the county owned the roadway. First, assuming appellant's "weak mental and physical condition" rendered him personally incapable of conducting an adequate investigation to determine the highway's ownership, as of late June 1987 he was represented by legal counsel who was not so incapacitated. The lower court focused on the delay that occurred after appellant retained an attorney, and counsel's inaction is imputed to appellant. (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 895, 898 [187 Cal.Rptr. 592, 654 P.2d 775].)

The contention that appellant's counsel was erroneously informed the county owned the roadway is simply not supported by the record. A Laguna Beach city employee told counsel's secretary the accident's location "was . . . in South Laguna," an unincorporated area. An employee with the county clerk's office advised the secretary "the accident location was in Orange County." However, the fact that the accident occurred in Orange County was never in dispute. The question was *who owned the roadway* where the accident occurred. There is no indication the secretary ever asked that question, nor any allegation a public employee affirmatively represented the county owned the roadway.

Even assuming appellant was erroneously advised the county owned the roadway, it is incredible counsel did not immediately file an application and claim with the state to protect her client's interests. Attorneys representing clients in personal injury matters routinely try to locate as many potential tortfeasors as possible to ensure his or her client receives adequate compensation. The CHP report reflected an accident occurring on a state highway. Thus, no basis existed for counsel's concern about filing a false claim.

Appellant relies on our prior decision in *Lawrence* v. *State of California* (1985) 171 Cal.App.3d 242 [217 Cal.Rptr. 200]. That case is

distinguishable. There the petitioner was injured on a sidewalk adjacent to State Route 1. He timely filed a claim with the county. There was no accident report available covering the incident. In addition, we held the evidence indicated the county chose not to alert petitioner to the actual owner of the property. (*Id.* at p. 246.)[3]

In his opening brief and at oral argument, appellant asserted the accident occurred in a bicycle lane that "abruptly ended without warning." Respondent disputes this contention. The record also contradicts it. The CHP report reflects the accident occurred in the highway's number two lane, and after appellant had crossed the bridge. Nothing in the report indicates a bicycle lane existed adjacent to the highway. But even if a bicycle lane did exist, respondent's potential liability still should have been apparent. The construction and maintenance of a bicycle lane along a state highway requires both the permission and participation of the department of transportation. (Veh. Code, § 21207; Sts. & Hy. Code, §§ 156.8, 2370 et seq.)

Here, the lower court found appellant failed to exercise reasonable diligence to discover who owned State Route 1. Since the state's ownership of that highway is established by statute, and appellant had a police report describing the accident as occurring on it, we conclude the evidence supports the lower court's ruling.

### DISPOSITION

The order denying appellant's petition for leave to file a late claim is affirmed. Respondent shall recover costs on appeal.

Crosby, Acting P. J., and Wallin, J., concurred.

---

[3] Furthermore, we note *Lawrence* involved an accident that occurred very close to where appellant was injured. Thus, our opinion in *Lawrence* should have given him notice respondent potentially owned or controlled the location.