Filed 8/3/21 J.G. v. City of Paso Robles CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| J.G., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF PASO ROBLES, <br><br> Defendant and Respondent. | 2d Civ. No. B301035 <br> (Super. Ct. No. 19CVP-0122) <br> (San Luis Obispo County) |

J.G. filed a petition for an order relieving her from the claim presentation requirement in Government Code section 910.[1] She alleged she was sexually assaulted, raped, stalked and harassed by Christopher McGuire, a Sergeant with the City of Paso Robles Police Department (Department), and sought relief as a prerequisite to filing an action for damages against the City of Paso Robles (City).

_____

[1] All further statutory references are to the Government Code.

The trial court denied the petition. It found J.G. had not demonstrated that her failure to present a timely claim to the City "was through mistake, inadvertence, surprise, or excusable neglect." (§ 946.6, subd. (c)(1).) We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

McGuire first assaulted J.G. on December 19, 2017, when he and several other officers responded to a domestic violence call she had placed. After arresting J.G.'s boyfriend, McGuire dismissed the other officers and remained in J.G.'s home for another four hours.

According to J.G., McGuire instructed her to hug him. She did so reluctantly. McGuire then grabbed J.G.'s hand and placed it on his firearm in his hip holster. He placed her other hand on his erect penis and asked which "gun" she preferred. When she said the firearm, McGuire asked what she would do to his "big cock."

McGuire eventually left J.G.'s home, but he returned within the hour with another officer to discuss the steps she must take following the domestic violence call. A few days later, McGuire appeared at her home in civilian clothes and said he was conducting a welfare check. McGuire told her he had to speak with her in the detached garage. She accompanied him to the garage, where he locked the door, pulled down his pants and attempted to force J.G. to perform oral sex on him. When she refused, McGuire pulled down her pants and raped her. McGuire told her he would be conducting additional patrol checks in her neighborhood that evening and threatened to harm her or have her children taken away if she told anyone what had occurred.

---

[2] The facts are taken from the allegations in the petition.

McGuire appeared at J.G.'s home several times thereafter, all while on patrol.

In April 2018, McGuire pulled over J.G. while she was driving with her daughter. McGuire, who was in uniform, was driving a marked patrol car. He expressed anger that she had reported the sexual abuse to someone. He then instructed J.G. to drive to her new residence. McGuire followed her home and ordered her to go into her bedroom. McGuire followed J.G., locked the door, placed his gun on the master bathroom counter, unzipped his pants and tried to force her to perform oral sex on him. J.G. alleges she fought back and screamed. McGuire told her to be quiet because her children were home and instructed her to escort him out of the house. He again threatened her with removal of her children and physical harm if she disclosed his conduct to anyone. He told her to call the Department every Wednesday and leave him a message. J.G. "was terrified of McGuire and out of fear for [her] own safety and for [her] children, did not say anything until [she] felt safe from McGuire."

In May 2018, the San Luis Obispo County Sheriff's Office (Sheriff's Office) began a months-long criminal investigation of McGuire's alleged sexual assaults of women. J.G. cooperated during the investigation and retained a criminal attorney, Ilan Funke-Bilu, to assist her as a crime victim under Marsy's Law. J.G. claims that, prior to the completion of that investigation, she did not know she had any "legal rights" and never discussed any potential "civil law rights and/or [other] remedies" with Funke-Bilu. No one from the City advised J.G. she was entitled to file a notice of claim with the City.

At the conclusion of the investigation, the Sheriff's Office recommended that McGuire be prosecuted for sexual assaults, but the District Attorney declined to prosecute. McGuire has since resigned from the Department's police force.

3

After learning of the District Attorney's decision, J.G. consulted a civil attorney, who advised her of the claim presentation requirement for filing an action against the City. Two months later, in February 2019, the attorney, Brian E. Claypool, served on the City a notice of claim and request to present a late claim.  In an accompanying letter, Claypool advised that J.G.'s failure to timely file a claim within six months of the abuse was due to "inadvertence and excusable neglect" pursuant to section 911.4.  The claim was denied by operation of law when the City did not respond within the 45-day statutory period.

In April 2019, J.G. filed the petition for an order relieving her from the claim presentation requirement.  (§ 946.6.)  The trial court issued a tentative decision granting the petition.  Following oral argument, the court took the matter under submission and ultimately denied the petition.  The court noted the alleged facts are "horrific" and "invoke the utmost sympathy and desire for justice," but determined it was "bound to follow the statutory authority and supporting case law in finding there is no excusable neglect warranting the grant of the petition."  J.G. appeals this decision.

In December 2019, J.G. filed a complaint against the City and McGuire in federal court.  The action seeks damages arising out of the sexual assault and harassment suffered by J.G.  The federal court granted the City's motion to dismiss as untimely the state law claims against the City, but the court has allowed other claims to proceed.

DISCUSSION

*Standard of Review*

"The decision to grant or deny a petition seeking relief under section 946.6 is within the sound discretion of the trial court and will not be disturbed on appeal except for an abuse of

4

discretion." (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275 (*Bettencourt*).) "Section 946.6 is a remedial statute intended 'to provide relief from technical rules that otherwise provide a trap for the unwary claimant.' . . . As such, it is construed in favor of relief whenever possible. . . . In order to implement this policy, any doubts should be resolved in favor of granting relief. . . . In light of the policy considerations underlying section 946.6, a trial court decision denying relief will be scrutinized more carefully than an order granting relief." (*Id.* at pp. 275-276, citations omitted; *DeVore v. Department of California Highway Patrol* (2013) 221 Cal.App.4th 454, 459.)

*Applicable Law*

A personal injury claim against a public entity must be filed within six months after the claim accrues. (§ 911.2, subd. (a).) The purpose of the claim procedure is to "give the public entity the opportunity to evaluate the merit and extent of its liability and determine whether to grant the claim without the expenses of litigation." (*Crow v. State of California* (1990) 222 Cal.App.3d 192, 202, disapproved on another ground by *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 634, fn. 7.)

If a claim is not presented within the six-month period, "a written application may be made to the public entity for leave to present that claim." (§ 911.4, subd. (a).) "The application shall be presented to the public entity . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim." (*Id.*, subd. (b); *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779 (*Munoz*).) "Accrual of the cause of action for purposes of [these statutes] is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants." (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th

201, 208-209, superseded by statute on another ground as stated in *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 914; see § 901.)

If the application for leave to present a late claim is denied, either expressly or by operation of law, the claimant's final recourse is to obtain a court order granting relief from the statutory claim presentation requirement. (§ 946.6.) The petition requesting such relief must be filed within six months after the public entity's denial of the late claim application. (*Ibid.*) To obtain relief, J.G. must show that an application was made to the public entity to file a late claim under section 911.4 and was denied or deemed denied and, as relevant to this case, that the failure to present a timely claim was due to "mistake, inadvertence, surprise or excusable neglect." (§ 946.6, subd (c)(1).) J.G. also must demonstrate that she did not discover facts until the filing period had expired and that reasonable diligence was used in pursuing discovery. (*Greene v. State of California* (1990) 222 Cal.App.3d 117, 121 (*Greene*).)

*The Trial Court Did Not Abuse Its Discretion by*
*Denying the Section 946.6 Petition for Relief*

Citing our decision in *Rason v. Santa Barbara City Housing Authority* (1988) 201 Cal.App.3d 817 (*Rason*), J.G. contends a trial court may not determine a claim's timeliness through a section 946.6 petition. *Rason* held that "a claimant who disputes the [public entity's] determination of untimeliness must raise that issue by filing suit rather than a section 911.4 application [to present a late claim]." (*Rason*, at pp. 822-823; *Ngo v. County of L.A.* (1989) 207 Cal.App.3d 946, 948.) The distinguishing feature here is that the untimeliness of J.G.'s claim was never disputed. J.G.'s first contact with the City was through her application for leave to present a *late* claim. J.G. appropriately challenged the denial of that application in her section 946.6 petition. (*Greene, supra*, 222 Cal.App.3d at p. 121;

6

see *Toscano v. County of Los Angeles* (1979) 92 Cal.App.3d 775, 783 ["An argument that one filed a timely claim is inconsistent with a petition for relief under section 946.6, since such petition necessarily follows the denial of an application for leave to file a late claim"].)

Next, J.G. argues her application to present a late claim and subsequent section 946.6 petition were "based on excusable mistake or neglect arising from a confluence of events and circumstances stemming from the terrifying sexual assault, rape, and threats of violence and retaliation that she suffered at the hands of . . . McGuire." As the City points out, this statement significantly expands the reasons set forth in her application and petition.

In *Lincoln Unified School Dist. v. Superior Court* (2020) 45 Cal.App.5th 1079, the Court of Appeal held that when a court considers a section 946.6 petition to excuse late filing, the "reason" for the delay due to mistake, inadvertence, or excusable neglect that the petitioner asserts before the trial court must be the same "reason" for mistake, inadvertence, or excusable neglect presented in the section 911.4 petition to the public entity. (*Id.* at pp. 1083-1084.) The court emphasized that because the statutes use the word "the" rather than "a" before "reason," "they refer to the same reason. The language and structure of the statutes thus require that 'the reason' offered to the superior court and to the public entity be the same." (*Id.* at p. 1095.)

J.G.'s request to file a late claim states a claim "was not timely filed due to inadvertence and excusable neglect by [J.G.] who was not represented by counsel with knowledge in civil litigation at the time." It further avers that "[a]t no time during that period, did her criminal attorney advise [J.G.] of the six month statutory period for filing a notice of claim."

7

J.G.'s section 946.6 petition also was based on her ignorance of the law, but it further claimed J.G. delayed taking action until she "felt safe" from McGuire's threats. She allegedly "felt safe" when the Sheriff's Office began investigating the allegations against McGuire.

A layperson's ignorance of the law is not "excusable neglect." (*Harrison v. County of Del Norte* (1985) 168 Cal.App.3d 1, 7; *Munoz, supra*, 33 Cal.App.4th at p. 1778 ["[M]istake of law based solely on ignorance of the six-month claim requirement is not enough"].) An attorney's failure to advise the client of his or her rights also is not excusable neglect. The attorney's negligence is imputed to the client and is not a ground for granting relief. (*Tammen v. County of San Diego* (1967) 66 Cal.2d 468, 476-478; *Torbitt v. State of California* (1984) 161 Cal.App.3d 860, 866; *Clark v. City of Compton* (1971) 22 Cal.App.3d 522, 528.)

The record supports the trial court's finding that "there is no evidence that Mr. Funke-Bilu's alleged failure to advise his client of the claims filing requirement constitutes excusable neglect. Indeed, Mr. Funke-Bilu does not indicate whether or not he is aware of the claims filing requirement (contrary to what is asserted in the petition); rather, he avers that he did not discuss these requirements with his client. Either way, it is not excusable neglect. The Legislature has spoken, and as the law currently stands, any failure on Mr. Funke-Bilu's behalf is attributed to his client, [J.G]."

Nor has J.G. established that the trauma she suffered tolled the time to present an administrative claim. J.G.'s references to being emotionally triggered are insufficient to demonstrate excusable neglect. There was no evidence the trauma "substantially interfered with [her] ability to function in daily life, take care of [her] personal and business affairs, or seek

8

out legal counsel." (*People ex rel. Dept. of Transportation v. Superior Court* (2003) 105 Cal.App.4th 39, 46.) Indeed, J.G. was able to "seek out legal counsel" to assist her in the criminal proceeding. (*Ibid.*) J.G. also failed to provide a declaration from a medical provider attesting to her mental state. As the trial court noted, we "cannot simply assume that [p]etitioner suffered incapacitating trauma even when it may very well be true and expected."

Finally, J.G. argues that the denial of her section 946.6 petition, even if affirmed, does not prevent her from pursuing the defense of equitable estoppel in her federal civil action for damages. We are not inclined to address an issue pending in another court and express no opinion as to the argument's merits.

DISPOSITION

The judgment (order denying the section 946.6 petition for relief from the claim presentation requirement) is affirmed. The City shall recover its costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

9

Ginger E. Garrett, Judge
Superior Court County of San Luis Obispo

_____


The Claypool Law Firm, Brian E. Claypool and Nathalie Vallejos; Esner, Chang & Boyer, Holly N. Boyer and Shea S. Murphy, for Plaintiff and Appellant.

Adamski Moroski Madden Cumberland & Green, Michelle L. Gearhart and Joshua M. George, for Defendant and Respondent.