Filed 11/13/13

<u>**CERTIFIED**</u> <u>**FOR**</u> <u>**PUBLICATION**</u>

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Yolo)

----

|  |  |
|---|---|
| RACHELLE DEVORE et al., | C071610 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVPT12398) |
| v. | |
| CALIFORNIA HIGHWAY PATROL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Yolo County, Daniel P. Maguire, Judge. Reversed.

Jeffrey | Scott and Scott R. L. Love for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Kristin G. Hogue, Assistant Attorney General, Alberto L. Gonzalez and Catherine Woodbridge Guess, Deputy Attorneys General, for Defendants and Respondents.

Plaintiffs Rachelle DeVore (individually and as administrator of the estate of her late husband, Oscar Alfaro) and her adult daughter, Steffani Hix, filed a petition pursuant to Government Code section 946.6[1] for relief from the Government Claims Act (§ 810 et

---

[1] Undesignated statutory references are to the Government Code.

1      (*SEE CONCURRING AND DISSENTING OPINION*)

seq.) requirement of presenting a timely claim to a public entity before bringing a tort action against it (§§ 911.2, 945.4), because defendant California Highway Patrol (CHP) had denied plaintiffs' alternative claim/request for leave to file a late claim (§ 911.4; see *Mandjik v. Eden Township Hospital Dist*. (1992) 4 Cal.App.4th 1488, 1500).  The trial court denied the petition, concluding that facts establishing defendants' potential liability to plaintiffs could have been discovered with reasonable diligence, so plaintiffs' failure to engage the services of an attorney for more than six months after their cause of action arose did not constitute excusable neglect that would qualify them for relief under section 946.6 (citing our decision in *People ex rel. Dept. of Transportation v. Superior Court* (2003) 105 Cal.App.4th 39 (*Dept. of Transportation*)), and precluded application of the doctrine of delayed discovery.[2]

On appeal, plaintiffs contend the trial court could not make findings on the issue of the accrual of their cause of action because this is beyond the scope of a proceeding on a petition for relief under section 946.6.[3]  They further maintain that the facts contained in the petition entitle them to relief.  We disagree with the former premise, but find that the facts establish grounds for relief under section 946.6.  We therefore shall reverse the order with directions to grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

The trial court makes its determination regarding the petition "[]on the basis of the petition, any affidavits in support . . . or in opposition . . . , and any additional evidence

---

[2]  The parties represent that plaintiffs had concomitantly filed a tort action against the CHP and defendant Justin Sherwood (a CHP officer).  Defendants apparently filed a demurrer in that action based on the preclusive effect of the ruling in the present matter, which the trial court denied on the ground that the present matter was on appeal.

[3]  We will generally refer to plaintiffs in the plural, although it does not appear plaintiff Hix took any active part in the events.

2

received at the hearing on the petition." (§ 946.6, subd. (e).) We draw our facts from these sources.

Shortly after 10:00 p.m. on August 3, 2010, plaintiffs' decedent was killed trying to avoid a multi-car accident while riding his motorcycle on Interstate 505 outside Winters, California. He was thrown when his motorcycle went down on the shoulder, and fell 34 feet from the bridge.

Thomas Roberts, who was driving under the influence of alcohol and drugs, was the cause of the accident, having crashed after overcorrecting his steering. He fled the scene on foot, ineffectually attempting to hide from authorities in nearby shrubbery. His breath smelled strongly of alcohol; breath samples indicated alcohol levels of 0.067 percent, and extrapolation from a later blood draw indicated a blood-alcohol level at 10:00 p.m. of between 0.06 and 0.11 percent. The car was uninsured, with expired registration tags. Roberts was charged inter alia with gross vehicular manslaughter while intoxicated.

Plaintiffs were in contact with the victim liaison in the prosecutor's office over the next few months. The liaison told them the process of bringing charges against Roberts could take several months, and prosecution might take years. Neither the liaison nor anyone else in the prosecutor's office ever mentioned that Roberts had been the subject of a traffic stop earlier in the evening.

In March 2011, plaintiffs were present at a session of the ongoing preliminary hearing and learned for the first time about the earlier traffic stop. The prosecutor called defendant Sherwood as a witness. Defendant Sherwood testified that the prosecutor had first contacted him at the beginning of February 2011 about testifying. The officer did not at that time have any independent recollection of the traffic stop, but reviewed the video and audio recording his patrol car had automatically made of it. At 8:20 p.m. on August 3, 2010, he had stopped the Roberts car for speeding about eight miles north of

3

Williams. From the video, it appeared to the officer that they had talked about whether Roberts had a driver's license and the circumstances of the speeding violation. The officer did not issue a citation, only a verbal warning against speeding. He had not seen any indicium of intoxication.

Plaintiffs were surprised to hear there had been a traffic stop of Roberts less than two hours before the accident. A reexamination of the CHP report on the accident confirmed that it did not include any reference to the earlier traffic stop or defendant Sherwood. Plaintiffs contacted the victim liaison, who confirmed that there was a dispatch record and a video of the traffic stop, but plaintiffs could not have access to it. At a May 2011 session of the preliminary hearing, plaintiffs approached the prosecutor and asked whether she (DeVore) should consult an attorney about filing an action against the CHP for failing to prevent the accident from happening. The prosecutor offered the opinion that it would be a hard case to prove because the officer had discretion about impounding the vehicle, and the several members of the Roberts family present in the car would have been stranded if it were impounded. He also offered the opinion that it would not be easy to find an attorney to take the case. Plaintiffs began to seek legal representation after a June session of the preliminary hearing. They found their present attorney in early July, and executed a retainer on July 29, 2011.

On August 3, 2011, counsel filed the notice of claim/application for leave to file a late claim. It asserted defendants' liability for failure to carry out a mandatory duty to impound the Roberts car when Roberts was unable to produce a valid driver's license. (Veh. Code, § 14607.6, subd. (c)(1) [peace officer "shall" impound car if driver fails to produce valid license].) The claim /application was denied in September 2011. In a request to CHP for public records, plaintiffs' counsel obtained the daily field record for defendant Sherwood for August 3, 2010, which showed a verbal warning for a speed infraction at 8:20 p.m. but no other identifying information. The CHP declined at that

4

time to provide a copy of the recording from defendant Sherwood's patrol car because it also contained "nonpublic" information that could not be redacted. The CHP did not have any other information relating to the traffic stop.

In denying the petition, the trial court stated, "Petitioners have not shown reasonable diligence in pursuing the claim, since Petitioners did not contact civil counsel until after the expiration of the six-month period. . . . The facts of this tragic incident suggest civil liability, and[,] if timely retained[,] counsel would have [had] a duty to 'diligently pursue the pertinent facts of the cause of action to identify possible defendants.' ([Citing *Dept. of Transportation*, *supra*, 105 Cal.App.4th at p. 45].) The cause of action accrued at or near the time of the incident, because even if the delayed discovery rule applies, the Petitioners had reason to discover the earlier traffic stop as part of the investigation into civil liability."

## DISCUSSION

### I.  Standards of Review

Section 946.6 provides a procedure for relieving a party from the condition precedent of presenting a timely claim to a public entity before commencing an action against the public entity on the cause of action contained in the claim. (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 430-431 (*Ebersol*).) In order to obtain relief, the party must establish that an application to the public entity for leave to file a late claim (§ 911.4) was filed in a reasonable period of time (not to exceed one year) after the accrual of the cause of action for reasons of inadvertence, mistake, surprise, or excusable neglect akin to the showing necessary for relief from default. (*Dept. of Transportation, supra,* 105 Cal.App.4th at p. 43.) As it is a remedial statute, a trial or appellate court must resolve any doubts in favor of the petition (*Ebersol*, *supra*, at p. 435), but the preference for a trial on the merits does not warrant relief if based on a perfunctory recital of diligence in support of excusable neglect (*Dept. of Transportation, supra,*

5

105 Cal.App.4th at p. 44; *Department of Water & Power v. Superior Court* (2000) 82 Cal.App.4th 1288, 1293 (*Water & Power*); cf. *Trailmobile, Inc. v. Superior Court* (1989) 210 Cal.App.3d 1451, 1455-1456 [same principle applied in context of dilatory prosecution]).

Upon finding an adequate showing that warrants relief, the trial court must then decide if granting the petition would be prejudicial to the public entity. (*Ebersol*, *supra*, 35 Cal.3d at p. 432.) In the absence of any evidence of particular prejudice to the public entity, a trial court abuses its discretion in denying a petition (*Kaslavage v. West Kern County Water Dist.* (1978) 84 Cal.App.3d 529, 538; *Syzemore v. County of Sacramento* (1976) 55 Cal.App.3d 517, 524; 1 Coates et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. Feb. 2011), § 7.33, p. 346 (Coates)), and if a denial is reversed for abuse of discretion the public entity is not entitled to marshal further evidence of prejudice on remand (*Moore v. State of California* (1984) 157 Cal.App.3d 715, 727).

An order denying a section 946.6 petition is an appealable order (*Ebersol*, *supra*, 35 Cal.3d at p. 435, fn. 8); an order granting the petition is reviewable only on appeal from the cause of action stated in the claim (see *County of Alameda v. Superior Court* (1987) 196 Cal.App.3d 619, 622). We review the ruling on the petition for an abuse of discretion. (*Dept. of Transportation*, *supra*, 105 Cal.App.4th at p. 44.)

## II. Jurisdiction to Adjudicate Accrual

In a proceeding on a section 946.6 petition, the trial court's authority to rule on the issue of the accrual of a cause of action is a recurring procedural dilemma. (1 Coates, Cal. Government Tort Liability Practice, *supra*, § 7.10, p. 323.) One strand of authority asserts that in the proceeding for *relief*, the issue of whether a claim was timely filed is not properly before the trial court; the court may consider only whether a plaintiff qualifies under one of the four categories (e.g., inadvertence, mistake, surprise, or excusable neglect). The second strand finds that a trial court can properly consider

6

accrual in a proceeding on a petition for relief if necessary to its ruling, but this ruling does not preclude a second court from coming to a different conclusion in a legal action for damages that alleges a timely presentation of the claim. The third strand concludes that the trial court can properly consider timeliness, *and* its ruling on this issue in a petition proceeding has preclusive effect in the independent action for damages. (See *Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 65, fn. 8 [summarizing cases].)

Relying on the first strand, plaintiffs assert we should strike any finding in the order regarding the date on which their cause of action accrued. We agree with Coates that the first strand is anomalous because the date of accrual can be a necessary subsidiary finding in deciding whether a party qualifies for relief, even if section 946.6 does not authorize the court to grant relief on the basis that a claim was in fact timely. (1 Coates, Cal. Government Tort Liability Practice, *supra*, § 7.10, p. 324; accord, *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 711-712 [first strand states rule too broadly; trial court has authority *and discretion* either to rule or defer ruling on issue].) As we will be directing the trial court to grant relief—a nonappealable order without preclusive effects (1 Coates, *supra*, § 7.11, p. 325)—and do not ourselves need to decide the date of accrual of plaintiffs' cause of action, we do not need to choose between the second and third strands regarding the future preclusive effects of a ruling on accrual in an order denying relief.

### III.  Excusable Neglect

In *Dept. of Transportation*, we indeed noted the principle that neglect is not excusable where a party does not take *any* action within six months after the accrual of a cause of action; at the very least, the party must attempt to engage the services of an attorney to investigate the facts to identify potential defendants in any cause of action arising out of a damaging incident. (*Dept. of Transportation*, *supra*, 105 Cal.App.4th at

7

pp. 44-45.)[4]  However, the facts that underlay the opinion involved a *patent condition* of public property:  Whether roadside weeds and shrubbery were an attractant to arsonists, and represented a dangerous condition whether or not the fire leading to the injury started naturally or through criminal agency.  (*Dept. of Transportation*, at p. 45.)  "When there is a *readily available* source of information from which the potential liability of a [public] entity may be discovered, a failure to use that source is deemed inexcusable."  (*Water & Power*, *supra*, 82 Cal.App.4th at p. 1294, italics added.)[5]  Thus, *Dept. of Transportation* turns on a claimant's failure to consult an attorney about an accident arising from an *obvious* condition of public property, who in turn could have readily determined the potential liability of the public entity, in holding that this could not be excusable neglect.  However, we did not hold expressly that this principle applies in the context of a claimant who does *not* reasonably have any basis to consult an attorney about the potential liability of a public entity, and cases are not authority for propositions not expressly considered. (*In re Randy J.* (1994) 22 Cal.App.4th 1497, 1504, fn. 7.)  Rather, the interpretive principle of ratio decidendi requires that we view the scope of a holding through the lens of the underlying facts.  (*Honey Baked Hams, Inc. v. Dickens* (1995) 37 Cal.App.4th 421, 427.)

Nor can such a principle be derived from *Ebersol*, which is among the cases cited in *Dept. of Transportation* for the general rule that a party must engage the services of an attorney in order to demonstrate excusable neglect.  *Ebersol* involved a bus driver for a

---

[4] Among the cases we cited was *Ebersol*, which also stated this principle (*Ebersol, supra*, 35 Cal.3d at p. 435).  *Ebersol*, however, found that a party who diligently but unsuccessfully sought representation within the period for filing a claim can still assert excusable neglect.  (*Id*. at pp. 437, 439.)

[5] Although one might think that discovering a new fact would be more in the nature of "surprise," cases and commentary categorize it under excusable neglect.  (See 1 Coates, Cal. Government Tort Liability Practice, *supra*, § 7.22, p. 334.)

private company who transported developmentally delayed teenagers from their homes to a work-training facility; she was unaware this program was under the aegis of a public entity. She suffered severe injuries when one of the teenagers bit her. (*Ebersol*, *supra*, 35 Cal.3d at p. 432.) From the day of the incident she began to contact attorneys, nine of whom told her that she did not have any basis for redress against whatever third party managed the program. Four months later, after the time for filing a claim expired (a 100-day claim period then being in effect), she consulted with an attorney who proffered a theory of third party liability for failure to warn of dangerous propensities, and who then readily discovered the public entity status of the program. (*Id.* at pp. 432-433, 439.) *Ebersol* held that a party who *diligently but unsuccessfully* seeks representation within the period for filing a claim can still assert excusable neglect, because at all times these unsuccessful diligent efforts were those of a reasonably prudent person. (*Id.* at pp. 437, 439.) The case as a result did not consider the issue of whether excusable neglect is barred for failure to engage an attorney in all circumstances, and consequently cannot be authority for that proposition.

*Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373 (*Barragan*) expressly declines to find that there is a strict mandate for an injured party to engage the services of an attorney within the six-month period to establish excusable neglect. (*Id.* at pp. 1376-1377.) The asserted basis for the public entity's liability was the nature of the rock and dirt embankment on which the plaintiff incurred her injuries after her car left the roadway. (*Id.* at pp. 1377, 1379.) The court concluded "there is no absolute rule barring excusable neglect when the claimant has failed to obtain counsel during the six-month period." (*Id.* at p. 1385.) Rather, the question is whether "the failure to seek counsel could *itself* be considered the act of a reasonably prudent person under the same or similar circumstances," in which case "excusable neglect is established." (*Ibid.,* italics added.) In the course of coming to this conclusion, *Barragan* noted another case had

9

similarly interpreted *Ebersol*. (*Barragan*, at pp. 1383-1384, citing *Bertorelli v. City of Tulare* (1986) 180 Cal.App.3d 432, 439 ["even the failure to obtain legal advice will be excused when a different course of action is reasonably prudent"].) With debilitating injuries and depression, the claimant's failure to consult with an attorney was the act of a reasonably prudent person. (*Barragan*, *supra*, at pp. 1385-1386.) Thus, even where an attorney *could* readily have determined the potential liability of the public entity, the failure to engage an attorney's services can still be excusable neglect.

In the present case, by contrast, nothing in the accident report or the records of the CHP would have led plaintiffs *or* an attorney acting with reasonable diligence to discover the earlier traffic stop or the identity of defendant Sherwood (and the audio/video recording from his patrol car). The trial court does not *identify* what trail plaintiffs or counsel could have followed to lead to these facts within the limitations period, and the record does not explain how the prosecutor made the connection; it may even be that defendant CHP supplied the information to him.[6] Without this information, plaintiffs reasonably did not have any motivation to retain counsel, there being little point in hiring counsel otherwise to pursue a claim against an uninsured motorist facing a lengthy jail term. The mere fact that the accident took place on a public roadway as a consequence of a drunken driver's loss of control was not a basis for plaintiffs to assume there was potential liability for a public entity, which can arise only where a condition of the roadway presents a danger to those using it with due care. (*Biscotti v. Yuba City Unified School Dist.* (2007) 158 Cal.App.4th 554, 558-561; see *Murrell v. State of California ex rel. Dept. Pub. Wks.* (1975) 47 Cal.App.3d 264, 271-272, fn. 7.) Thus, the failure to

---

[6] It is speculation for defendants to suggest that had plaintiffs retained an attorney earlier, the attorney would have discovered the facts in the prosecutor's possession earlier than plaintiffs. Moreover, the record does not indicate the prosecutor was even aware of defendant Sherwood for any appreciable time before contacting him in early February 2011.

engage an attorney before learning about the earlier traffic stop (and through that the public entity's potential connection with the accident) was the omission of a reasonably prudent person under similar circumstances. (*Ebersol*, *supra*, 35 Cal.3d at p. 435; *Barragan*, *supra*, 184 Cal.App.4th at p. 1385; *Water & Power*, *supra*, 82 Cal.App.4th at p. 1296.)

In a little more than three months after learning the fact, plaintiffs retained counsel (despite the prosecutor's discouragement about the merits of pursuing an action against the CHP), who immediately filed the claim/leave to file late claim. This was not an unreasonably long period of time to file after obtaining the information about the potential liability of defendants. Defendants cite eight other cases (which appear in 1 Coates, Cal. Government Tort Liability Practice, *supra*, § 7.52, pp. 364-365) in which courts found that delays of various lengths (including some shorter than here) under various circumstances were unreasonable. However, we must review the present trial court's ruling in light of the specific facts in the record before the court, and it is generally unproductive to compare different cases on a question of fact such as this. (*People v. Rundle* (2008) 43 Cal.4th 76, 137-138 [sufficiency of evidence]; *Robison v. City of Manteca* (2000) 78 Cal.App.4th 452, 458, fn. 5 [issue of undue influence]; *State Compensation Ins. Fund v. Brown* (1995) 32 Cal.App.4th 188, 202 [status as independent contractor].) Suffice it to say that these cases generally involve complete inaction for a period longer than plaintiffs waited here to seek counsel, and mostly involve inaction on counsel's part before filing an application for leave to file a late claim. None of these cases find unreasonable delay as a matter of law.

Defendants reiterate their wan claim of prejudice advanced in the trial court. They contend they will be forced to defend the case with defendant Sherwood's stale memory. However, his memory had already declined by the time his involvement in the traffic stop came to light in March 2011, and he was forced to reconstruct it from the patrol car video

11

and audio.  As a result, there is no prejudicial change in the circumstances to defendants if plaintiffs are now given leave to pursue their claim.[7]

In short, plaintiffs' failure to discover a basis for public entity liability before March 2011was excusable.  The delay before they applied for leave to file a late claim was reasonable.  Defendants have failed to demonstrate any particular prejudice from the delay in filing the claim.  The trial court therefore abused its discretion in denying the petition.

## DISPOSITION

The order denying the petition is reversed with directions to grant the petition. Plaintiffs shall recover their costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                    BUTZ             , J.

I concur:

        BLEASE         , Acting P. J.

---

[7]  Moreover, it would not appear that the litigation of plaintiffs' claim will survive a demurrer (and thus require delving into defendant Sherwood's memory).  In *California Highway Patrol v. Superior Court* (2008) 162 Cal.App.4th 1144, 1155, we held that Vehicle Code section 14602.6, which provides that a peace officer "*may*" impound the vehicle of a person driving with a *suspended or revoked* license, did not impose a mandatory duty that could be the basis for a tort action against a public entity (Gov. Code, § 815.6) for the failure of a CHP officer to impound the car of a drunken driver who retrieved it after his release from custody and killed another driver later that day. Plaintiffs will be hard pressed to distinguish the statute on which they are relying here (Veh. Code, § 14607.6), given that the use of "shall" is not necessarily the sine qua non of a mandatory duty under Government Code section 815.6.  (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 429 [ultimate question is whether "commanded" act does or does not lend itself to a " 'normative or qualitative debate' " over manner in which undertaken].)  However, we do not have any occasion to resolve that issue in the present action.

12

**Mauro, J, concurring and dissenting:**

As the majority correctly explains, the trial court had authority to determine the accrual date of plaintiffs' cause of action. (Maj. opn. at p. 7.) Unlike the majority, however, I would not bypass review of the trial court's accrual determination. (Maj. opn. at p. 7.)

The trial court erred in finding that plaintiffs' cause of action accrued at or near the time of the accident, because unrefuted evidence establishes that plaintiffs did not discover, and did not have reason to discover, the facts giving rise to their claim until March 25, 2011. Thus, plaintiffs' cause of action did not accrue until then. Additional unrefuted evidence establishes that plaintiffs presented a government claim less than six months after their cause of action accrued. Accordingly, plaintiffs are entitled to relief because they complied with the government claim filing requirements.

I disagree with part III of the majority opinion.

I

Generally, a cause of action accrues when the wrongful act is done, or the wrongful result occurs, and the consequent liability arises. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.) But the delayed discovery rule is an exception to the general rule. (*Ibid.*) It postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (*Ibid.*) A plaintiff discovers the cause of action when she at least suspects a factual basis, as opposed to a legal theory, for its elements. (*Ibid.*) A plaintiff has reason to discover the cause of action when she has notice or information of circumstances that would put a reasonable person on inquiry. (*Id.* at pp. 397-398.)

Here, the trial court found that plaintiffs' cause of action against the California Highway Patrol and Officer Sherwood accrued at or near the time of the accident. The trial court said the facts of this tragic accident suggest civil liability, and if plaintiffs had retained counsel in a timely manner, counsel would have had a duty to diligently pursue

1

the pertinent facts of the cause of action to identify possible defendants.  The trial court concluded that even if the discovery rule applied, plaintiffs "had reason to discover the earlier traffic stop as part of the investigation into civil liability."

On appeal, plaintiffs contend the trial court should not have selected *any* accrual date, because accrual under the discovery rule is a question for the jury.  I agree with the majority that the trial court had authority to determine the accrual date in ruling on the petition for relief, because the accrual date was a subsidiary finding in determining whether plaintiffs were entitled to relief from the claim filing requirements.  (Maj. opn. at p. 7.)

Plaintiffs also assert, however, that the trial court selected the *wrong* accrual date. The majority concludes we need not decide the accrual date (Maj. opn. at p. 7), but I believe we should address plaintiffs' contention.

" 'Resolution of the statute of limitations issue is normally a question of fact.' [Citation.]  More specifically, as to accrual, 'once properly pleaded, belated discovery is a question of fact.' [Citation.]  As our state's high court has observed:  'There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge.  [Citation.]  It is a question for the trier of fact.' [Citation.]  'However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law.' [Citation.]" (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1320.)

Thus, although the trial court's finding regarding accrual of the cause of action must be upheld on appeal if supported by substantial evidence (*Institoris v. City of Los Angeles* (1989) 210 Cal.App.3d 10, 17), where the underlying facts are not in dispute, the question of accrual is one of law, subject to independent review.  (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1388.)

The record on appeal shows that plaintiff Rachelle DeVore filed a declaration in support of plaintiffs' petition for relief from the government claim filing requirements.

She declared it was not until March 25, 2011, that she first learned an officer had previously stopped Roberts on the evening of the accident.

Plaintiffs' attorney, Scott Love, also filed a declaration in support of the petition. Among other things, the declaration attached a copy of the accident report, which did not contain any indication that Roberts had previously been stopped on the evening of the accident.

The record on appeal does not include any additional declarations or evidence filed by the California Highway Patrol and Officer Sherwood. Moreover, the record indicates defendants did not cite to any evidence in the record refuting plaintiffs' assertion of delayed discovery. Although defendants argued that had plaintiffs conducted even a minimal search, they would have learned about Officer Sherwood just as the prosecutor had learned about him, defendants did not cite evidence supporting that assertion. In fact, they admitted that Officer Sherwood did not prepare a police report regarding the prior stop.

On this record, the undisputed evidence indicates that plaintiffs did not discover, and did not have reason to discover, facts giving rise to their cause of action against the California Highway Patrol and Officer Sherwood until March 25, 2011. Accordingly, plaintiffs' cause of action did not accrue until that date.

## II

A claim against a public entity relating to a cause of action for wrongful death must be presented no later than six months after the accrual of the cause of action. (Gov. Code, § 911.2.) Plaintiffs presented their government claim on August 3, 2011, less than six months after the accrual of their cause of action. The California Highway Patrol and Officer Sherwood did not file, or cite, contrary evidence. Unrefuted evidence establishes that plaintiffs presented a timely claim.

3

Plaintiffs are entitled to relief because they complied with the government claim filing requirements.

          MAURO        , J.