[Civ. No. 35923. Second Dist., Div. Five. Oct. 20, 1970.]

KENNETH BENNETT et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Edelberg, Miller & Golding and Louis S. Edelberg for Plaintiffs and Apellants.

Roger Arnebergh, City Attorney, Joseph F. Rank and Ralph C. Curren for Defendants and Respondents.

## OPINION

**KAUS, P. J.**—This is an appeal from an order, denominated judgment, denying relief from the late filing of a claim. (Gov. Code, § 946.6.)

In their petitions, Mr. and Mrs. Bennett recite that their minor son Brian died on October 21, 1968, when he was buried under a cement wall that had been left in a hazardous condition by the respondent city. No claim was filed with the city within the 100-day period prescribed by section 911.2 of the Government Code. A claim was eventually filed on February 18, 1969, 19 days late. The reason for the late filing of the claim was petitioners' "inadvertence and neglect, excusable in view of the fact that no attorney had been consulted until after the 100-day period had elapsed and due to the emotional state of mind of the claimants following the loss of their minor son" which disabled them from tending to their affairs "as they normally would." The respondent city was fully informed of the accident by the president of its city council, by news media and by a complaint lodged through a property owners' association on October 23, 1968. On the day before, October 22, 1968, the general manager of the city's department of airports had addressed the following letter to petitioners: "I realize that at such a time no words or actions can ease the sorrow of the loss of Brian. Speaking for the Commissioners and the staff of the Department of Airports, and personally as a parent, I can only express our heartfelt condolences." This letter, according to the pleading, ". . . implied . . . that 'actions' would be taken by Respondent to 'ease the sorrow of the loss of Brian [their son]', thereby instilling in petitioners a false sense of security and misleading them to believe that the Respondent would voluntarily reimburse them for their loss."

The petition, by appropriate reference, incorporates petitioners' application to the city for leave to present a late claim. It is copied in the footnote.[1] This application had been accompanied by a claim which appears correct as to form and content.

---

[1]"COME Now the claimants Kenneth Bennett and Alberta Bennett and ask leave of the City of Los Angeles and to the Department of Airports to present a late claim for damages arising out of the death of their minor son, Brian.

"The reason for filing the late claim is that we were completely unaware of any requirements of the filing of a claim and did not become aware of any until consulting with an attorney on the 17th day of February, 1969, and the failure to present the claim sooner was due through mistake, inadvertence, surprise and excusable neglect and the City of Los Angeles and the Department of Airports has not been prejudiced by the failure to present a timely claim.

"That attached hereto and made a part hereof is the proposed claim for damages which applicants are asking to file and are filing herewith.

"This application is made under penalty of perjury."

The 946.6 petition was opposed by the city. The matter was submitted on August 11, 1969. Three days later the court made the following minute order: "The only showing why the plaintiffs did not file a claim within 100 days is that they did not know a claim was required until they consulted an attorney on the 119th day after the accrual of the claimed cause of action. The letter expressing a condolence does not estop the city or the Department of Airports. Petition denied. Counsel for the city and the department will present a proposed judgment as to those two defendants."

Before the court signed a formal judgment, petitioners made a "Motion To Vacate Order Denying Petition for Relief From Requirement Of Filing Claim And Application For Leave To Renew Said Petition (C.C.P. § 1008) . . ." This motion was accompanied by a new declaration signed by the petitioner Kenneth Bennett which realleges certain matters alleged in the original petition—which had been verified by petitioners' counsel—states that all the publicity surrounding the death of their son led petitioners "to believe that the City would have a representative contact [them] to adjust any claims [they] might have for the death of [their] son" and alleges finally, that until late August petitioners were unaware of the fact that certain security guards on duty in the area where the accident occurred were city employees. The motion was argued and submitted on September 19. A minute order denying it was made October 8, on which day findings of fact and conclusions of law were filed, together with the formal denial of the petition. Pertinent findings are to the effect that the application under section 911.4 was made within a reasonable time; that the city would not have been prejudiced had leave to present a late claim been granted, but that ". . . it is not true that the failure to so file was due to inadvertence or surprise or excusable neglect or the emotional state of either plaintiff. . . ." The court further found that the city had been fully informed of the accident, that it was not estopped to rely on the claims statute, and had not waived its provisions.

On appeal petitioners first urge that they never were under an obligation to file a claim in the first place, because the uncontradicted evidence shows that at no time, during the 100-day period, were they aware that the injury had been caused by a public employee. For this proposition petitioners rely on section 950.4 of the Government Code.

Petitioners mistake the purpose of section 950.4. It merely provides an exception to the requirement of section 950.2 that in order to perfect an action against a public employee, as distinguished from an entity, a claim must be filed against the entity. (Gov. Code, § 950.2.)

Next, relying on *Viles* v. *State of California,* 66 Cal.2d 24 [56 Cal.Rptr. 666, 423 P.2d 818], petitioners claim that the denial of their

petition was an abuse of the trial court's discretion. In discussing this claim we must be constantly aware of the different functions performed by the superior court and ourselves. Unless, ultimately, each case of this nature is to be decided by the Court of Appeal as if no trial court had ever acted on the petition, we must be careful to preserve the area of the superior court's discretion and we must do this in fact, as well as in words. It is easy enough to give the appearance that the respective functions of the two courts are being preserved: all we need do is label as an "abuse of discretion" any ruling with which we happen to disagree. ■ Admittedly, in this area, denials of relief "are scanned more carefully than cases where the court granted the relief, to the end that wherever possible cases may be heard on their merits. . . ." (*Viles* v. *State of California,* 66 Cal.2d at p. 29.) Yet we cannot arbitrarily substitute our judgment for that of the trial court. This is demonstrated by *Martin* v. *City of Madera,* 265 Cal. App.2d 76 [70 Cal.Rptr. 908]. ■ There, in a case which in some respects was similar to our own, the court affirmed a denial of relief, although it conceded that had relief been granted "it is unlikely that we would have distributed the trial judge's discretion. . . ." (*Martin* v. *City of Madera,* 265 Cal.App.2d 76, 80 [70 Cal.Rptr. 908].)

True, *Viles* contains fairly strong language favoring petitioners and *Viles* was, indeed, a case where the Supreme Court held that the trial court had abused its discretion. It is also true, however, that the facts justifying the failure to file a claim within 100 days were much stronger than those present here. Similarly we may readily concede that *Tammen* v. *County of San Diego,* 66 Cal.2d 468 [58 Cal.Rptr. 249, 426 P.2d 753], where the Supreme Court affirmed a denial, presents facts which are less appealing than the case made by petitioners here.

We believe that little is to be gained by matching the facts of prior cases against ours. Let us, rather, closely examine what was before the trial court in this instance.

First of all one cannot but be impressed by the sparse nature of petitioners' showing. Basically their claim is that they did not know of the 100-day limit and that they thought the city would get in touch with them.

In *Tammen* the Supreme Court quotes, with approval, from *Security Truck Line* v. *City of Monterey,* 117 Cal.App.2d 441, 445 [256 P.2d 366, 257 P.2d 755] as follows: ". . . Ignorance of the law, at least where coupled with negligence in failing to look it up, will not justify a trial court in granting relief (*Shearman* v. *Jorgensen,* 106 Cal. 483 [39 P. 863]; *Penryn Land Co.* v. *Akahori,* 37 Cal.App. 14 [173 P. 612]), and such facts will certainly sustain a finding denying relief. . . ."

In *Tammen* the ignorance of the law was that of counsel. Petitioners are laymen. But what kind of laymen? The city attorney justly points out: ". . . Obviously, it is one thing for a ditch digger without knowledge of the English language to assert ignorance of the claims statute and another for a lawyer specializing in municipal law to do so. Yet, from all that appears in the petition, plaintiff, Kenneth Bennett, could be either. Nothing is set forth as to his background, experience, education, or contact with similar situations. Thus, assuming the plaintiffs intended to assert ignorance of the claims statute, respondent submits it would not be an abuse of the court's discretion to reject mere assertion unless it is accompanied by facts and circumstances from which the appellate court must find an abuse of discretion by such rejection."

We may concede that perhaps no layman should be charged with negligence in not discovering section 911.2 of the Government Code by failing to look it up himself. At the same time, we cannot say that it was an abuse of discretion on the part of the trial court to find, as it did by implication, that a layman, who is aware of the fact that he has a compensable claim, is neglectful if he fails to consult an attorney for more than 100 days after an accident. True, petitioners alleged that because of their grief they were "unable to tend to their affairs as they normally did." This does not quite cover the point, for after a personal tragedy such as petitioners suffered, the question is not whether they could look after their affairs as they normally would, but whether they were able to undertake the extraordinary steps for which such a situation unfortunately calls. As was observed in *County of Santa Clara* v. *Superior Court* *(Cal.App.) 78 Cal.Rptr. 835[2]: "It is to be expected that virtually every claimant in a wrongful death or personal injury suit will be emotionally upset to some degree; but an exceptional showing, not attempted here, must be made to come within the terms of the statute."

Without doubt petitioners' own showing demonstrates that they were fully aware of the fact that they had a litigable claim. While they maintained that it was the letter of condolence which led them to believe that the city would voluntarily "reimburse" them, no one can quarrel with the trial court's finding that such a belief is not justified by the wording of the letter. This gives petitioners' statement concerning the letter a significance which they probably did not intend: that they were, indeed, thinking about compensation. We do not criticize them for such thoughts. They are appropriate to the occasion and encouraged by the very existence of a statute

---

[2]The court was referring to that portion of section 946.6 which commands relief where the injured person is "physically or mentally incapacitated" during the 100-day period prescribed by section 911.2. (Gov. Code, § 946.6, subd. (c) (3).)

*A hearing was granted by the Supreme Court on August 6, 1969. The final opinion of that court is reported in 4 Cal.3d 545 [94 Cal.Rptr. 158, 483 P.2d 774].

which prescribes a relatively short time for the filing of claims. Neither, however, can we criticize the trial court. It apparently felt that, absent a showing of peculiar circumstances, a prospective claimant, who realizes that he has a claim, should, in the exercise of due care for his own interest, take the normal step of consulting an attorney.

The order is affirmed.

Stephens, J., and Aiso, J., concurred.