[No. C042168. Third Dist. Jan. 7, 2003.]

THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION,
Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
PAUL ISENHOWER et al., Real Parties in Interest.

COUNSEL

Bruce A. Behrens, Brelend C. Gowan, Joel G. Philipp, George L. Cory and Lauren A. Machado for Petitioner.

No appearance for Respondent.

Ringhoff & Toledo, Stephen J. Ringhoff and Theressa Y. Toledo for Real Parties in Interest.

OPINION

**CALLAHAN, J.**—In this case, we hold that the trial court abused its discretion in relieving Paul Isenhower and his two children from the six-month deadline to file a government claim (Gov. Code, § 911.2 [all further unspecified statutory references are to this code]) based on "mistake, inadvertence, surprise, or excusable neglect" (§ 946.6, subd. (c)(1)), where the record reveals a total absence of diligence on their part during the entire claim-filing period. We will issue a peremptory writ.

*Facts*

The facts are undisputed. On June 1, 2001, Paul Isenhower and his wife were traveling southbound on Highway 99 near the Manteca bypass when they noticed a cloud of smoke, which obscured vision on the highway. Isenhower's wife drove into the smoke and became disoriented. She drove the vehicle onto the shoulder of the road and stopped. Isenhower was able to get out of the vehicle. His clothing caught fire, but he was able to extinguish the flames. His wife perished when the car caught fire.

Isenhower was hospitalized and emotionally upset after the fire incident. He understood from newspaper accounts that the fire may have been set by an arsonist. He did not seek legal counsel for at least six months.

In late December or early January, Isenhower was discussing his wife's death with his barber. The barber suggested that Isenhower consult with another customer who was an attorney specializing in personal injury and wrongful death cases. On January 16, 2002, Isenhower consulted with Attorney Stephen Ringhoff, who told him he had a potential claim against the State of California (the State) for failure to properly maintain the roadside.

*Procedural History*

On January 31, 2002, approximately eight months after the incident, Isenhower and his two children filed an application to present a late claim against a governmental entity with the State (§ 911.4). The State failed to approve or deny the claim within 45 days thereafter, resulting in its denial by operation of law. (§ 911.6.)

The three claimants (collectively Isenhower) then petitioned the superior court for relief from the requirements of the claim-filing statute. Relief was requested on the ground that Isenhower's failure to present a government claim within the six-month limitation period was due to "mistake, inadvertence, surprise, or excusable neglect." (§ 946.6, subd. (c)(1).) The court issued an order granting the petition.

The State then filed in this court a petition for peremptory writ of mandate compelling the superior court to vacate its order. We granted an alternative writ; we now grant the relief requested by the State.

*Discussion*

Section 911.2 requires that a claim for personal injury or wrongful death against a public entity be filed "not later than six months after the accrual of the cause of action." ██ Sections 911.6 and 946.6, subdivision (c)(1) provide relief for late claimants who file their claims against a public entity beyond the six-month filing period, if filed within a reasonable time not to exceed one year after the accrual of the cause of action, "where the claimants established by a preponderance of the evidence that failure to present their claim on time was through mistake, inadvertence, surprise or excusable neglect." (*Harrison v. County of Del Norte* (1985) 168 Cal.App.3d 1, 6 [213 Cal.Rptr. 658] (*Harrison*); *Segal v. Southern California Rapid Transit Dist.* (1970) 12 Cal.App.3d 509, 511-512 [90 Cal.Rptr. 720].) The showing required of a petitioner seeking leave to file a late claim on these grounds is the same as that required by Code of Civil Procedure section 473 for relieving a party from default judgment. (*Bertorelli v. City of Tulare* (1986)

180 Cal.App.3d 432, 438 [225 Cal.Rptr. 582] (*Bertorelli*); *Viles v. State of California* (1967) 66 Cal.2d 24, 29 [56 Cal.Rptr. 666, 423 P.2d 818].)

As an appellate court, we review the trial court's ruling on a petition for relief under section 946.6 for abuse of discretion. However, that discretion "must be exercised in conformity with the spirit of the law. [Citation.] The general policy favoring trial on the merits cannot be applied indiscriminately so as to render ineffective the statutory time limits. [Citation.]" (*Department of Water & Power v. Superior Court* (2000) 82 Cal.App.4th 1288, 1293 [99 Cal.Rptr.2d 173] (*DWP*).)

"Excusable neglect" is defined as the act or omission that might be expected of a prudent person under similar circumstances. (*DWP, supra*, 82 Cal.App.4th at p. 1294.) It is not shown by the mere failure to discover a fact until it is too late; the party seeking relief must establish that *in the exercise of reasonable diligence*, he failed to discover it. (*Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1783 [39 Cal.Rptr.2d 860] (*Munoz*); *Greene v. State of California* (1990) 222 Cal.App.3d 117, 121 [272 Cal.Rptr. 52].)

The evidence before the trial court established that Isenhower believed from newspaper accounts that the fire on Highway 99 which killed his wife was started by an arsonist; that he did nothing for six months to retain counsel or investigate the potential responsibility of other parties; that seven and a half months after the accident, on the recommendation of his barber, he consulted with Attorney Stephen Ringhoff; and that eight months following Mrs. Isenhower's death, Ringhoff made application on his clients' behalf to file a claim against the State on a theory of negligent maintenance of the high grass and weeds abutting the freeway.

This case does not involve the diligence of Isenhower's attorney, who undisputedly proceeded with reasonable diligence after meeting with his client. The pivotal issue is the diligence exercised by Isenhower during the six-month claim-filing period. In this respect, the record demonstrates that there was *no diligence at all*. Isenhower did nothing until his fortuitous conversation with his barber, which took place seven months after the incident.

The law neither expects nor requires an unsophisticated claimant to undertake an in-depth investigation into the possible liability of public entities, or to be aware of the peculiar time limitations of the governmental claims statutes. However, California cases are uniformly clear that "*a petitioner may not successfully argue excusable neglect when he or she fails to take any action in pursuit of the claim within the six-month period*. The

claimant *must, at a minimum, make a diligent effort to obtain legal counsel within six months after the accrual of the cause of action.* Once retained, it is the responsibility of legal counsel to diligently pursue the pertinent facts of the cause of action to identify possible defendants." (*Munoz, supra,* 33 Cal.App.4th at pp. 1778-1779, italics added, citing *Ebersol v. Cowan* (1983) 35 Cal.3d 427, 439 [197 Cal.Rptr. 601, 673 P.2d 271] (*Ebersol*) and *Bertorelli, supra,* 180 Cal.App.3d at pp. 439-440; see also *Tsingaris v. State of California* (1979) 91 Cal.App.3d 312, 313-314 [154 Cal.Rptr. 135]; *Bennett v. City of Los Angeles* (1970) 12 Cal.App.3d 116, 121-122 [90 Cal.Rptr. 479] (*Bennett*).)

■ Isenhower contends, in essence that, due to his belief that the fire was caused by an arsonist (a belief which the State does not claim was unfounded), the trial court could properly conclude that his failure to discover the State's involvement was excusable. The argument does not fly because there is no causal connection between the asserted belief and Isenhower's failure to consult with legal counsel. Isenhower's proposed theory of recovery against the State is based on negligent maintenance of the weeds and shrubbery on the roadside, which according to his own petition, "were an attractant to an arsonist and represented a dangerous condition *no matter how the fire started.*" (Italics added.) By his own admission, Isenhower's dilatory conduct cannot be attributed to any belief about the origin of the fire. While it is true that the theory of liability Isenhower now seeks to raise would not occur to a layperson, this demonstrates why the exercise of reasonable diligence requires a person to make at least *some effort* to seek out counsel when confronted with a tragedy such as the one at bar.
■ As the California Supreme Court stated in *Ebersol,* in order to obtain relief based on excusable neglect under section 946.6 a claimant "must at a minimum make a diligent effort to obtain legal counsel" within the governmental claim-filing period. (*Ebersol, supra,* 35 Cal.3d at p. 439.)[1] In *Ebersol,* the court held the claimant had exercised reasonable diligence because she sought legal advice on the day of her injury and consulted nine attorneys, each of whom told her she had no case, before she found counsel who discovered that she had a potential claim against the county. (*Ebersol, supra,* at pp. 432-433.) The diligence exercised in that case stands in stark contrast to that shown here. ■ Isenhower's argument is equivalent to saying that a person mugged in a city-owned garage may be excused from seeking

[1]When *Ebersol* was decided the statutory claim-filing period was only 100 days. It has since been extended to six months. (Historical and Statutory Notes, 32 West's Ann. Gov. Code (1995 ed.) foll. § 911.2, p. 561.) The Legislature's near doubling of the allowable filing period lends further support for our view that inexcusable delay is established where the claimant fails to seek counsel or undertake any investigative effort during the *entire period* within which a government claim may be filed.

the advice of counsel in pursuing a claim for dangerous condition of public property because he thought his injuries were solely the fault of the mugger. It is precisely because theories of third party liability are subtle, complex, and often not readily apparent to a layman that due diligence requires at least consultation with legal counsel. (See *Ebersol, supra,* at p. 439.)

██ Isenhower also maintains the trial court could properly consider the "physical and emotional effect" that the incident had on him in finding excusable neglect. The only evidence which supports this contention is Isenhower's statement in his declaration that he was hospitalized for 17 days and "was in a severe state of emotional depression for a significant amount of time thereafter."

██ Isenhower's reliance on postaccident depression and trauma is not properly cognizable on appeal because it was never made in the trial court. (*Harrison, supra,* 168 Cal.App.3d at pp. 8-9; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2001) ¶ 8:229, p. 8-113.) ██ Even if considered, however, Isenhower's hospital stay and self-diagnosed "depression" are insufficient to demonstrate excusable neglect, because no evidence was offered that these conditions substantially interfered with his ability to function in daily life, take care of his personal and business affairs, or seek out legal counsel. Moreover, it does not explain the total lack of diligence on the part of decedent's children, who were not involved in or witnesses to the accident.

Significant emotional anguish and depression on the part of those immediately affected may be expected in virtually every major personal injury and wrongful death case. (*Bennett, supra,* 12 Cal.App.3d at p. 121.) The Legislature obviously did not believe these conditions could provide an escape hatch from the claim-filing requirement, as evidenced by the fact that "incapacitation" is listed as a separate ground for relief, and is available only where the condition exists throughout the *entire* course of the claim-filing period. (§ 946.6, subd. (c)(3).) Isenhower's relatively short stay in the hospital and cursory allusion to postaccident "depression" do not tip the scales in favor of a finding of relief based on excusable neglect. (See *Bennett, supra,* at p. 121; *Harrison, supra,* 168 Cal.App.3d at p. 9; *Martin v. City of Madera* (1968) 265 Cal.App.2d 76, 81 [70 Cal.Rptr. 908].)[2]

Excusable neglect consists of the act or omission of a reasonably prudent person under the circumstances. Inasmuch as there was no evidence of

---

[2]Isenhower's citation to *Perez v. City of Escondido* (S.D.Cal. 2001) 165 F.Supp.2d 1111 is not persuasive. In *Perez,* the plaintiff's son was instructed by a 911 operator to go out the front door of his home. When he did so, he was shot in the head by police officers, an event witnessed by both the plaintiff and her daughter. The son underwent brain surgery, suffered a stroke, and received continuing inpatient and outpatient care, while the daughter underwent

diligence, let alone reasonable diligence, the evidence here does not meet this standard. The trial court abused its discretion in granting the petition.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order granting relief from requirements of the government claims statutes and to enter a new order denying the petition.

Blease, Acting P. J., and Davis, J., concurred.

A petition for a rehearing was denied January 30, 2003, and the petition of real parties in interest for review by the Supreme Court was denied April 30, 2003. Kennard, J., was of the opinion that the petition should be granted.

---

trauma counseling. The plaintiff consulted an attorney less than a month after the six-month claims period expired and presented a claim against the city within a week after retaining counsel. In her affidavit, the plaintiff stated she was "overwhelmed" by having witnessed the shooting of her son, and was unable to focus on anything other than her son's survival, her daughter's emotional health, and how to pay for large medical bills. She was also required to work full time as a single mother to provide for the needs of her children. (*Id.* at pp. 1112-1113.) The federal district court, applying section 946.6, subdivision (c)(1), granted relief. (*Perez, supra,* at p. 1118.) Without criticizing *Perez,* a trial court decision not binding on this court, we observe that the factual showing there is qualitatively different and far more compelling than the evidence presented herein.