Filed 12/28/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| N.G., <br><br> Petitioner and Appellant, <br><br> v. <br><br> COUNTY OF SAN DIEGO, <br><br> Respondent. | D076539 <br><br><br> (Super. Ct. No. 37-2018-00049834-CU-PT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine Bacal, Judge.  Affirmed.

Gilleon Law Firm and James C. Mitchell, for Petitioner and Appellant.

Thomas E. Montgomery, County Counsel, Melissa M. Holmes and Alexa Katz, Deputy County Counsel, for Respondent.


N.G. appeals from a judgment denying her petition under Government Code section 946.6,[1] in which she sought relief from the requirement in the Government Claims Act (§ 810 et seq.) that she timely file a claim with the

---

[1]    Unless otherwise indicated, all further statutory references are to the Government Code.

County of San Diego (the County) prior to bringing a suit for damages.

N.G.'s proposed claim against the County arises from an alleged sexual assault by San Diego County Deputy Sheriff Richard Fischer. N.G.'s petition for relief alleged that due to the emotional trauma and psychological difficulties faced by victims of sexual assaults committed by law enforcement officers, which can cause those victims to delay in coming forward, her failure to file a timely claim should be excused due to mistake or excusable neglect.

We conclude that the trial court was within its discretion to conclude that N.G. did not establish mistake or excusable neglect to support her petition for relief from the claim filing requirement. Accordingly, we affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Fischer's Assault and N.G.'s Application to File a Late Claim With the County*

On June 25, 2018, N.G. submitted a proposed claim for damages to the County, alleging that Fischer sexually assaulted her on October 5, 2017. As N.G. acknowledges, the claim was submitted 81 days after the six-month period for filing a claim expired. Accordingly, N.G. also filed an application for leave to file a late claim. On June 28, 2018, the County denied leave to file a late claim.

According to the claim that N.G. submitted to the County, she was driving to a motel with her 12-year-old daughter after an argument with her husband on October 5, 2017. Fischer, along with two other deputies, pulled over N.G. because N.G.'s husband had falsely reported that N.G. was driving while under the influence of alcohol and drugs. Fischer later called N.G.'s cell phone and then showed up at her motel room, explaining that he wanted to check on N.G.'s daughter. Fischer asked N.G. to go into the motel room's

2

bathroom with him, where he closed the door and hugged N.G., telling her she was gorgeous. Fischer then told N.G. he had to leave, but he would call later. At around 11:00 p.m., Fischer called N.G. and then arrived at her motel room. Fischer directed N.G. to come into the bathroom with him, where he hugged and groped her, "dry hump[ed]" her, and then put his hand down her pants. Fischer decided to leave, but as he exited Fischer said, "You can't let anybody know about this because I will get into big trouble. There will be trouble for everyone." When Fischer asked N.G. if he could call her again, N.G. told him she might not have the same phone number after her husband "turn[ed] off" her phone. Fischer said, "I know how to find you." According to N.G., "[t]his scared [her] very much" and she "has been paranoid to this day because he made that comment." Fischer did not make any further contact with N.G.

B.  *N.G.'s Petition For Relief From the Trial Court*

On October 1, 2018, N.G. filed a petition with the trial court pursuant to section 946.6 for relief from the requirement that she file a timely claim with the County prior to pursuing a suit for damages. N.G. alleged that her failure to file a timely claim was the result of excusable neglect or mistake.

N.G. filed a declaration in support of her petition. The declaration set forth the same facts about Fischer's conduct described in N.G.'s submission to the County, along with an explanation of why she delayed in filing a claim. N.G. explained, "Because of the incident with Fischer and his comment to me, I was scared to report him. Added to this was my fear that my 12[-]year[-]old daughter, who was in the hotel room during the incident, would learn what had happened to me in the bathroom with Fischer and this would have a detrimental affect [*sic*] on her. . . . After the incident, I was mentally depressed and decided for what I thought was my own and my daughter's well-being, to put the incident on the list of bad things that had happened to

3

me and not talk about it again. I also thought if I reported what Fischer had done to me to the Sheriff's Department, no one would believe me because it was my word against his, and as [a] law enforcement officer, he would get the benefit of the doubt."

N.G. explained her reason for ultimately contacting a lawyer and attempting to file a claim with the County. "In early to mid-June 2018, I saw a news report about Deputy Fischer being accused of hugging and groping other women and that criminal charges had been filed against him for these acts. Until I learned this information, I thought my story about what Fischer had done to me would not be believed and I had no rights against him for what he did to me on October 5, 2017." N.G. also stated that until she sought legal advice, she was unaware of the six-month claim filing deadline.

N.G.'s petition was also supported by a declaration from Carlton Hershman, a retired police detective with substantial experience in sex crime investigations, who now owns a business called Sexual Assault Training and Consulting. Hershman stated:

> "One of the common issues I dealt with constantly in investigating sex crimes and interviewing and dealing with women and men who were victims of alleged sexual assaults and rapes was delayed or late reporting by the victims, especially women. Some of the many reasons I learned about during these numerous investigations for victims delaying the report of an alleged sexual assault were:
>
> "a.    Victims who stated they did not think they would be believed;
>
> "b.    Situations where the alleged perpetrator possessed social status, like a relative, a supervisor at work, a teacher, physicians, therapists or law enforcement personnel;
>
> "c.    Victims who stated they were ashamed and embarrassed about what happened to them;

4

"d.     Self-blame, that is, victims thinking they may have encouraged the assault, felt guilty at not resisting or not resisting strongly enough and guilt at possibly placing themselves in a vulnerable situation through self-intoxication;

"e.     Victims who feared entering the judicial system, for example, having their credibility attacked and having to recount a traumatic or highly unpleasant event;

"f.     What is commonly referred to as the 'give-up' factor, or the perceived need by the victim to move on and try to put the incident behind them; and

"g.     Competing priorities in life, as well as confusion about what happened to them and what to do."

Hershman also explained, "Another thing I have learned in my experience that has encouraged reluctant sexual assault victims to come forward is where they learn about other victims of a same or different perpetrator who have come forward. . . . Many times, victims also feared retaliation or being re-contacted by the perpetrator."

Hershman stated that, based on his reading of N.G.'s declaration, he believed that "the reasons N.G. has given for not reporting the October 5, 2017 sexual assault by Fischer until mid-June 2018, after she saw media reports about other victims, were reasonable under the circumstances" and that she acted "in a way that a reasonably prudent sexual assault victim would have acted under the same circumstances." Specifically, Hershman focused on (1) N.G.'s fear that Fischer would re-contact her; (2) Fischer's warning that "there will be trouble for everyone"; (3) N.G.'s concern for her emotional well-being and that of her daughter; and (4) N.G.'s belief that no one would believe her over a law enforcement officer.[2]

---

[2]     In support of her petition, N.G. also lodged as an exhibit a complaint she filed against the County and Fischer in the superior court on August 3,

After holding a hearing and considering the parties' briefing, the trial court issued a ruling denying the petition and entered judgment in favor of the County.

In its ruling, the trial court first set forth the applicable legal precedent and summarized N.G.'s arguments: "In support of her request, petitioner cites a number of factors for the 81-day delay, which she argues are sufficient to demonstrate mistake or excusable neglect. These include that she was afraid of Deputy Fisher [*sic*] because he groped her in a [m]otel bathroom while her 12-year-old daughter was asleep in the next room, the impact the disclosure would have on her daughter, the fear that Fischer would re-contact her, and that nobody would believe her. N.G. says she wanted to 'put the incident on the list of bad things that had happened to me and not talk about it again.' . . . Hershman opined that the reasons given by N.G. for her delay are common and reasonable for victims of sex crimes, as was the fact that she prioritized her family." The trial court then explained its decision to deny the petition:

> "N.G. knew all the facts on which her claim was based at the time of the incident. And . . . N.G. has not presented any evidence that she had a physical and/or mental disability which limited her ability to function or seek out counsel. While it is understandable that N.G. was concerned about her family and wanted to put the incident behind her, this is not an exceptional showing of an act of reasonably prudent person to establish excusable neglect. A reasonably prudent person would have, at

2018. Specifically, the complaint alleged federal civil rights claims (42 U.S.C. § 1983), and seven state law causes of action: assault and battery, sexual assault and battery (Civ. Code, § 1708.5), intentional and negligent infliction of emotional distress, gender violence (Civ. Code, § 52.4), interference with civil rights (Civ. Code, § 52.1), and invasion of privacy.

the very least, made some effort to obtain counsel.  Because N.G. did not, her petition cannot be granted."[3]

N.G. filed a timely notice of appeal from the trial court's judgment.

## II.

## DISCUSSION

A.    *The Claim Filing Requirements of the Government Claims Act*

The Government Claims Act (§ 810 et seq.) provides, as a general rule, that no suit for money or damages may be maintained against a public entity unless a timely written claim has first been presented to it.[4]  (§ 945.4; *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990 [" ' "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity" ' "].)  A claim for an "injury to person" must be presented "not later than six months after the accrual of the cause of action."  (§ 911.2, subd. (a).)  "When a claim . . . is not presented within [the required] time, a written application may be made to the public entity for leave to present that claim."  (§ 911.4, subd. (a).)  "The application shall be presented to the public entity . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim."  (§ 911.4, subd. (b).)

If the public entity denies the application to file a late claim, section 946.6 authorizes the injured party to petition the trial court for relief from the claim filing requirements.  In ruling on the petition, the trial court "shall relieve the petitioner from the requirements of Section 945.4" to timely

---

[3]    As part of its ruling, the trial court overruled the County's objection to Hershman's declaration.

[4]    Section 905 sets forth several exceptions to the requirement that local public entities must be presented with claims for money or damages prior to the filing of a lawsuit, but none of those exceptions are applicable here.

file a claim if two requirements are met.  (§ 946.6, subd. (c).)  First, the application to the public entity to file a late claim must have been made within a reasonable time not exceeding one year after the accrual of the cause of action.  (§ 946.6, subd. (c).)  Second, one of the four circumstances set forth in section 946.6, subdivision (c) must be shown by a preponderance of the evidence.  (§ 946.6, subd. (c); *Ebersol v. Cowan* (1983) 35 Cal.3d 427, 431 (*Ebersol*).)  One of these circumstances is at issue in this case:  (1) "[t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of Section 945.4."  (§ 946.6, subd. (c)(1).)[5]  In deciding a petition for relief from the claim filing requirements, a trial court considers "the petition, any affidavits in support of or in opposition to the petition, and any additional evidence received at the hearing on the petition."  (§ 946.6, subd. (e).)

Our Supreme Court has recently summarized the policy behind the requirement that a person seeking money or damages from a public entity file a timely claim before bringing a lawsuit.  The requirement (1) " 'affords the entity an opportunity to promptly remedy the condition giving rise to the injury' "; (2) " 'permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located' "; and

---

[5]  Only "[u]pon finding an adequate showing that warrants relief, [must] the trial court . . . then decide if granting the petition would be prejudicial to the public entity."  (*DeVore v. Dept. of California Highway Patrol* (2013) 221 Cal.App.4th 454, 459.)  Here, because the trial court concluded that N.G. did not make a showing warranting relief, it did not reach the issue of prejudice to the County.  Because we will affirm the trial court's judgment, we also need not consider the issue of prejudice to the County.

(3) " 'gives [the public entity] time to engage in appropriate budgetary planning.' " (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 907-908 (*Rubenstein*).)

B. *Standard of Review*

"The decision to grant or deny a petition seeking relief under section 946.6 is within the sound discretion of the trial court and will not be disturbed on appeal except for an abuse of discretion." (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275 (*Bettencourt*).) "Section 946.6 is a remedial statute intended 'to provide relief from technical rules that otherwise provide a trap for the unwary claimant.' . . . As such, it is construed in favor of relief whenever possible. . . . In order to implement this policy, any doubts should be resolved in favor of granting relief. . . . In light of the policy considerations underlying section 946.6, a trial court decision denying relief will be scrutinized more carefully than an order granting relief." (*Bettencourt,* at pp. 275-276, citations omitted.)

C. *Case Law Considering Relief Based on Mistake or Excusable Neglect*

As a basis for her petition, N.G. relies on the provision that affords relief if the petitioner can establish that "[t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect . . . ." (§ 946.6, subd. (c)(1).) Specifically, N.G. contends that she established that her failure to file a timely claim was based on mistake or excusable neglect.

To obtain relief under section 946.6, subdivision (c)(1), "[t]he mere recital of mistake, inadvertence, surprise or excusable neglect is not sufficient to warrant relief. Relief on grounds of mistake, inadvertence, surprise or excusable neglect is available only on a showing that the claimant's failure to timely present a claim was reasonable when tested by the objective 'reasonably prudent person' standard." (*Dept. of Water & Power v. Superior*

9

*Court* (2000) 82 Cal.App.4th 1288, 1293 (*Dept. of Water & Power*).)[6] Under the reasonably prudent person standard, "[e]xcusable neglect is that neglect which might have been the act of a reasonably prudent person under the circumstances." (*Id.* at p. 1296.) When relief is sought based on mistake, because of the reasonably prudent person standard "it is not every mistake that will excuse a default, the determining factor being the *reasonableness* of the misconception." (*Shank v. County of Los Angeles* (1983) 139 Cal.App.3d 152, 157, italics added.)[7]

A showing of reasonable diligence is required to establish that the petitioner acted as a reasonably prudent person. When excusable neglect is claimed based on ignorance of a fact or failure to act on it, "[a] person seeking relief must show more than just failure to discover a fact until too late; or a simple failure to act. He [or she] must show by a preponderance of the evidence that in the use of reasonable diligence, he [or she] could not discover the fact or could not act upon it." (*Dept. of Water & Power, supra,* 82 Cal.App.4th at p. 1296.) Similarly, when mistake is claimed, "[t]he party seeking relief based on a claim of mistake must establish he [or she] was diligent in investigating and pursuing the claim . . . ." (*Id.* at p. 1293.)

_____

6 "[T]he showing required for relief under section 946.6 because of mistake, inadvertence, surprise or excusable neglect is the same as required under Code of Civil Procedure section 473 for relieving a party from a default judgment." (*Ebersol, supra,* 35 Cal.3d at p. 435.)

7 In the context of section 946.6, subdivision (c)(1), courts have considered relief based on either mistake of fact or mistake of law. (*Bettencourt, supra,* 42 Cal.3d at 276 [excusable mistake of fact when "plaintiffs' attorney made the erroneous assumption that employees of Sacramento City College were state employees"]; *Viles v. State* (1967) 66 Cal.2d 24, 29 [mistake in law regarding time period to file a claim based on incorrect information given by insurance adjusters].)

Under this standard, " '[f]ailure to discover the alleged basis of the cause of action in time is . . . not a compelling showing in the absence of reasonable diligence exercised for the purpose of discovering the facts.' " (*Harrison v. County of Del Norte* (1985) 168 Cal.App.3d 1, 7.)  Further, "the mere ignorance of the time limitation for filing against a public entity is not a sufficient ground for allowing a late claim." (*Ibid*.)

In most cases, " 'a petitioner may not successfully argue excusable neglect when he or she fails to take *any action* in pursuit of the claim within the six-month period,' " including making an attempt to retain counsel. (*People ex rel. Dept. of Transportation v. Superior Court* (2003) 105 Cal.App.4th 39, 44 (*Dept. of Transportation*), italics added.)  However, in certain exceptional cases, excusable neglect may be found based on extreme instances of physical or mental disability, or on debilitating emotional trauma, *even if* the petitioner failed to take any action whatsoever in the initial six-month period.  (*Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373, 1385–1386 (*Barragan*) [trial court did not abuse its discretion in excusing late claim by petitioner who became quadriplegic from a car accident, and who for six months had to relearn life skills, could not sit up without assistance, and did not leave her bedroom]; *County of Santa Clara v. Superior Court* (1971) 4 Cal.3d 545, 552 [affirming trial court ruling excusing late claim by parents who were emotionally traumatized by their son's death in the middle of his own trial seeking damages for severe injuries suffered in a car accident].)

Under this line of cases, "[i]f a claimant can establish that physical and/or mental disability so limited the claimant's ability to function and seek out counsel such that the failure to seek counsel could itself be considered the act of a reasonably prudent person under the same or similar circumstances,

11

excusable neglect is established." (*Barragan*, *supra*, 184 Cal.App.4th at p. 1385.)  However, because "every claimant is likely to be suffering from some degree of emotional upset, . . . it takes an *exceptional showing* for a claimant to establish that his or her disability reasonably prevented the taking of necessary steps." (*Ibid*., italics added.)  A petitioner makes an exceptional showing by establishing that emotional trauma has "substantially interfered with his [or her] ability to function in daily life, take care of his [or her] personal and business affairs, or seek out legal counsel." (*Dept. of Transportation, supra,* 105 Cal.App.4th at p. 46.)  As one court has observed, "[s]ignificant emotional anguish and depression on the part of those immediately affected may be expected in virtually every major personal injury and wrongful death case.  [Citation.]  The Legislature obviously did not believe these conditions could provide an escape hatch from the claim-filing requirement, as evidenced by the fact that 'incapacitation' is listed as a separate ground for relief, and is available only where the condition exists throughout the *entire* course of the claim-filing period.  (§ 946.6, subd. (c)(3).)" (*Ibid*.)

D.    *The Trial Court Did Not Abuse Its Discretion in Concluding that N.G. Failed to Establish Mistake or Excusable Neglect*

N.G. argues that the trial court abused its discretion because "uncontradicted evidence" showed that her "delay resulted from excusable neglect, an act or omission that might be expected of a reasonably prudent person under similar circumstances, a victim of sexual assault by a law enforcement officer, or resulted from an honest, reasonable mistake any sexual assault victim could have made."

As an initial matter, we note that in identifying the mistake and the excusable neglect that warrant relief, N.G. does not strictly separate the two concepts in her discussion.  As support for both mistake and excusable

neglect, she argues that because of emotional and psychological factors, a victim of sexual assault can reasonably be expected to delay in making a claim until other victims come forward. In explaining these intertwined theories of relief, N.G. states, "The most reasonable inference from the uncontradicted evidence N.G. presented, if examined through the lens of a person who was sexually assaulted by [a] law enforcement officer . . . is: until she learned through media reports about other Fischer victims and [that] he was being criminally prosecuted . . . , N.G. had made an honest mistake by thinking she had no rights against him and the County any reasonably prudent sexual assault victim under similar circumstances could have made. The other reasonable inference is that her delay in reporting him, or seeking legal advice and submitting a claim for damages until late June 2018, were acts or omissions that might be expected of a reasonably prudent sexual assault victim facing the same circumstances. This qualifies as excusable neglect or a mistake that merits relief under section 946.6 and the applicable case law."

As N.G.'s arguments for both mistake and excusable neglect focus on the emotional and psychological factors that cause a victim of sexual assault to delay in coming forward, we do not separately analyze the issues of mistake and excusable neglect in our analysis. We focus instead, as N.G. does, on whether her status as a victim of sexual assault supports a claim for relief.[8]

---

[8] N.G. argues that the trial court abused its discretion by failing to separately address, in its ruling, whether she established *mistake*, focusing instead on whether N.G. had shown *excusable neglect*. In light of the intertwined nature of N.G.'s argument for the two grounds for relief, we find no fault with the trial court for its focus on excusable neglect.

N.G. presents several arguments in an attempt to establish that the trial court abused its discretion.  We consider each in turn.

1.      *The Trial Court Was Not Required to Rely on Hershman's Conclusion That N.G. Acted Like a Reasonably Prudent Person*

In arguing that the trial court abused its discretion, N.G. places heavy reliance on Hershman's declaration, in which Hershman explained that a woman who experiences trauma from sexual assault may understandably delay in reporting the incident.  In N.G.'s case, she reacted to Fischer's assault by assuming that she would not be believed, by developing a fear of what might occur if she reported the assault, and by prioritizing her concerns for the well-being of herself and her daughter.  Pointing specifically to Hershman's opinion that N.G. acted "in a way that a reasonably prudent sexual assault victim would have acted under the same circumstances[,]" N.G. argues that the trial court abused its discretion by not ruling in her favor because "Hershman's opinions were not refuted with any contrary evidence, or by an expert opinion provided by the County."

We reject this argument because the trial court was not required to rely on Hershman's opinion on the ultimate issue presented.  "Although otherwise admissible opinion evidence 'is not objectionable because it embraces the ultimate issue to be decided by the trier of fact' [citation], an expert is not allowed 'to testify to legal conclusions in the guise of expert opinion.  Such legal conclusions do not constitute substantial evidence. [Citation.]  "The manner in which the law should apply to particular facts is a legal question and is not subject to expert opinion." ' "  (*King v. State of California* (2015) 242 Cal.App.4th 265, 292.)  As our Supreme Court has observed in a different context, "it is the [finder of fact], not the expert, that determines whether defendant's belief and, ultimately, her actions, were objectively reasonable." (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1087 (*Humphrey*) [the opinion

14

by an expert on battered woman's syndrome (now referred to as "intimate partner battering and its effects" in Evid. Code § 1107) was not controlling on the issue of whether the defendant's actions were objectively reasonable].)

2. *N.G. Does Not Establish That the Trial Court Failed to Consider the Relevant Circumstances in Determining Whether N.G. Acted Like a Reasonably Prudent Person*

N.G. next contends that the trial court abused its discretion because it failed to take into account that she was a victim of sexual assault by a law enforcement officer, rather than a generic tort victim.

In arguing for relief, N.G. states, "This Court should recognize the distinct and well-recognized psychological circumstances N.G. proved that sexual assault victims face which tend to prevent them from reporting the assault, or seeking legal advice about their rights. The guilt and shame many of these victims experience, like N.G. did, creates a mental barrier to revealing what happened to them to anyone. The fear of not being believed adds to this. N.G. also showed this mental barrier is even harder to overcome when the assault was by a man with real or apparent power over them, or with a high societal status, like a law enforcement officer. These circumstances are not what the usual tort victim encounters."

We have no quarrel with the principle that when a petitioner seeks relief under section 946.6 based on mistake or excusable neglect, the court must focus on the circumstances confronting the petitioner, including the fact that, as a general matter, victims of sexual assault may be subject to psychological pressures that cause them to delay in reporting the assault. Specifically, a court considering whether to grant relief must test the reasonableness of petitioner's mistake or neglect based on "the *objective* 'reasonably prudent person' standard." (*Dept. of Water & Power, supra,* 82 Cal.App.4th at p. 1293, italics added.) Case law arising in a range of legal

15

contexts establishes that a finder of fact assessing *objective* reasonableness "must consider all of the relevant circumstances in which defendant found herself." (*Humphrey*, *supra*, 13 Cal.4th at p. 1083 [a claim for self-defense by a battered woman must be analyzed based on the circumstances specific to such victims, including the existence of battered woman's syndrome]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1205 [in the context of gross negligence, the objective test of whether a reasonable person in the defendant's position would have been aware of the risk involved must be analyzed based on a reasonable person "*in defendant's position*" and should " 'consider all relevant circumstances' "].) Indeed, case law is clear that in considering whether relief is warranted under section 946.6, subdivision (c)(1), the trial court must inquire whether the petitioner engaged in " 'neglect that might have been the act or omission of a reasonably prudent person *under the same or similar circumstances.*' " (*Barragan, supra,* 184 Cal.App.4th at pp. 1382-1383, italics added.)

Further, assuming that qualified expert evidence is offered and admitted regarding the psychological issues common to victims of sexual assault, we agree with N.G. that the existence of those common psychological issues may be considered in determining, as an objective matter, whether a victim of sexual assault has acted like a reasonably prudent person under the circumstances. (*Humphrey*, *supra*, 13 Cal.4th at pp. 1083-1084, 1086 [evidence of battered woman's syndrome, which " 'has been defined as "a series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives[,]" ' " is relevant to determine whether the defendant had an *objectively* reasonable belief in the need to act in self-defense].) Thus, although, as we have explained, the trial court was not

16

required to accept Hershman's opinion on the *ultimate issue* of whether N.G. acted like a reasonably prudent person under the circumstances, Hershman's declaration was relevant insofar as it discussed the psychological factors that may cause a sexual assault victim to delay in reporting the assault.

With these legal standards in mind, N.G. contends that "[t]he trial court abused its discretion by examining N.G.'s actions through the lens of a 'reasonably prudent person.' What the court did not do, as it was required to in determining excusable neglect or mistake, was to examine N.G.'s actions through the lens of a 'reasonably prudent person' under similar circumstances."

We disagree. The trial court's ruling shows that it was aware of and considered the particular circumstances of N.G.'s case. Those circumstances, as described by the trial court, included the fact that (1) N.G. alleged she was a victim of sexual assault by Fischer; and (2) as described by Hershman, victims of sexual assault are subject to psychological issues that can cause them to delay in making a report. As the trial court described in its ruling, "Hershman opined that the reasons given by N.G. for her delay are common and reasonable for victims of sex crimes . . . ." The trial court then applied the legal standards relevant to a claim of relief under section 946.6, subdivision (c), and it decided that N.G. had not established that she met those standards.

Had the trial court failed to consider the evidence in Hershman's declaration about the psychological issues unique to sexual assault victims, or had it failed to consider N.G.'s status as the victim of a sexual assault, we would agree that the trial court failed to apply the proper standard and therefore abused its discretion. However, we find no indication that the trial court applied an erroneous standard.

17

3. *The Trial Court Was Within Its Discretion to Conclude That Although N.G.'s Delay May Have Been Due to Psychological Factors Arising From Sexual Assault, She Did Not Establish Psychological Disability for Relief Based on Mistake or Excusable Neglect*

N.G.'s final argument is that, taking into account the psychological factors that may cause a victim of sexual assault to delay in reporting an assault, the trial court should have concluded that she was under "the functional equivalent of a *temporary psychological disability*." (Italics added.) According to N.G., "what [she] proved were facts unique to sexual assault victims that had the real effect of limiting her ability to seek counsel and, as Hershman's opinions showed, were a *temporary psychological barrier* to turning in a law enforcement officer who had sexually assaulted her." (Italics added.)

As we have explained, case law establishes that psychological disability or severe emotional trauma justifies relief under section 946.6, subdivision (c)(3) only if it "substantially interfere[s] with [the petitioner's] ability to function in daily life, take care of [her] personal and business affairs, or seek out legal counsel." (*Dept. of Transportation, supra,* 105 Cal.App.4th at p. 46.) A petitioner seeking relief based on psychological disability or emotional trauma must make an "exceptional showing." (*Barragan, supra,* 184 Cal.App.4th at p. 1385.) We evaluate the trial court's ruling that no exceptional showing was made by using an abuse of discretion standard. (*Bettencourt, supra,* 42 Cal.3d at p. 275.) Applying that deferential standard, appellate courts have *affirmed* trial court orders denying relief *even when* the petitioner showed that the delay in attempting to file a claim arose because of circumstances that involved significant emotional trauma. (*Bennett v. City of Los Angeles* (1970) 12 Cal.App.3d 116, 121 [the emotional state of grieving parents whose son died after being buried under a cement wall maintained

18

by the city did not warrant relief for excusable neglect in failing to file a claim]; *Dept. of Transportation*, at p. 46 ["depression" experienced by a husband who survived a car accident in which his wife died did not warrant relief from the claim filing requirement].)

We are sympathetic to the emotional trauma and psychological issues that a woman experiences when she is sexually assaulted by a man in a position of authority. As Hershman explained, a woman who experiences such trauma may understandably delay in reporting the incident. However, despite the fact that N.G. alleges she was the victim of sexual assault by a law enforcement officer, we are constrained by the applicable standard of review to conclude that the trial court was within its discretion to decide that N.G.'s psychological response to Fischer's assault did not amount to the type of extreme psychological disability needed to excuse her from complying with the claim filing requirement. Although we in no way make light of the significant emotional hurdles faced by victims of sexual assault, we also cannot fault the trial court for exercising its discretion in this case to conclude that the psychological state in which N.G. found herself after Fischer's sexual assault did not "substantially interfere[ ] with [her] ability to function in daily life, take care of [her] personal and business affairs, or seek out legal counsel" (*Dept. of Transportation, supra,* 105 Cal.App.4th at p. 46), and did not rise to the "exceptional showing" required for relief based on psychological disability or emotional trauma. (*Barragan, supra,* 184 Cal.App.4th at p. 1385.) The facts presented to the trial court support its finding that N.G.'s psychological state was not so debilitating that N.G. was excused from making a timely claim.

As a final point, we note that the County cautions against the relief sought by N.G., arguing that "N.G.'s expansive interpretation of 'excusable

neglect' would permit any claimant to sidestep their statutory deadline[,]" and "it would provide an open-ended exception that could be exploited in virtually every case." (Emphasis and capitalization omitted.) N.G. disagrees. She explains that she is not advocating an across-the-board carve-out to the claim filing requirement that would apply whenever the petitioner is a victim of sexual assault by a law enforcement officer. However, at the heart of N.G.'s position is the argument that the trial court abused its discretion by not granting relief based on "the distinct and well-recognized psychological circumstances . . . that sexual assault victims face which tend to prevent them from reporting the assault, or seeking legal advice about their rights." If we were to accept that argument, it is difficult to conceive of any case that would not, as a matter of law, require a victim of sexual assault by a law enforcement officer to be granted relief under section 946.6, subdivision (c)(3), as long as the petition is supported by an expert declaration similar to Hershman's. Such a result would effectively override the broad discretion that the trial court is given to decide whether a particular petitioner has established that he or she acted like a reasonably prudent person under the circumstances.

Moreover, it is not our role to create a broad carve-out to the claim filing requirement. As our Supreme Court has explained, the claim filing requirement in the Government Claims Act advances several important policy goals. (*Rubenstein, supra,* 3 Cal.5th at pp. 907-908.) These policies would be undermined if we were to hold that a trial court necessarily abuses its discretion if it does not grant relief from the claim filing requirement for victims of sexual assault by law enforcement officers in light of the psychological issues commonly experienced by such victims. As especially relevant here, requiring prompt reporting of sexual assault by a law

20

enforcement officer serves the important goal of promptly identifying abusive officers so that the public entity can take prompt action to prevent similar assaults on other members of the public. (*Rubenstein*, at p. 907 [the requirement to file a timely claim "affords the entity an opportunity to promptly remedy the condition giving rise to the injury"].)

In sum, the sole issue before us is whether the trial court abused its discretion in denying relief. We do not decide whether a different decision would also have been reasonable. However, when we apply the deferential standard of review that is required here, we conclude that the trial court did not abuse its discretion by concluding that N.G. failed to act as a reasonably prudent person by waiting to come forward until Fischer's other victims had done so. We therefore affirm the trial court's denial of N.G.'s petition.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

GUERRERO, J.

21